## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

CIVIL ACTION
NO. 2585CV1729B

Michelle Gauvin and Jeffrey Berkowitz et al )
)
) Plaintiff(s)
v.

Wachusett Youth Football + Cheer, Inc.

Defendant(s)

SUMMONS AND
ORDER OF NOTICE

A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON

To the above-named Defendant:

You are hereby summoned and required to serve upon
__Peter S. Farrell_____, Plaintiff's attorney, whose address is
Farrell Law Group PLLC, 46 Railroad Avenue, Suite 20Y, Duxbury MA 02332
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint. You are also required to file your answer to
~~the SUPERIOR COURT~~, either before service upon plaintiff's attorney or
within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim, or you will thereafter be barred from making such claim in any
other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the
complaint, for a preliminary injunction and that a hearing upon such application will be held at the court
house at said Worcester in the Civil _____ session without jury of our said court on
__Tuesday_____ the __14th__ day of __October_____ A.D. 20__25__ at __2:00_____ o'clock
A.M., P.M., at which you may appear and show cause why such application should not be granted.

Witness, Michael. D. Ricciuti, Esquire, at Worcester, the ___6th___ day of __October__
in the year of our Lord two thousand and __25_____.

Clerk of Courts

This summons is issued pursuant to Rules 4 and 65 of the Massachusetts Rules of Civil Procedure
When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate
summons is used for each defendant, each should be addressed to the particular defendant.



Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court Superior Court | E-FILED |
|---|---|---|---|

COUNTY Worcester Superior Court (Worcester)

| Plaintiff | Michelle Gauvin & Jeffrey Berkowitz | Defendant | Wachusett Youth Football and Cheer |
|---|---|---|---|
| ADDRESS: | 35 Birchwood Drive | ADDRESS: | 24 Sycamore Drive |
| | Holden, MA 01520 | | Rutland, MA 01543 |
| | | | |
| Plaintiff Attorney: | Peter S. Farrell | Defendant Attorney: | |
| ADDRESS: | 46 Railroad Avenue, Suite 204 | ADDRESS: | |
| | Duxbury, MA 02332 | | |
| BBO: | 656512 | BBO: | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D03 | Injunction | F | ☒ YES   ☐ NO |

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?             Is there a class action under Mass. R. Civ. P. 23?
☐ YES   ☒ NO                                    ☐ YES   ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

    1. Total hospital expenses          _____

    2. Total doctor expenses          _____

    3. Total chiropractic expenses          _____

    4. Total physical therapy expenses          _____

    5. Total other expenses (describe below)          _____

    _____

                 Subtotal (1-5): _____ $0.00

B. Documented lost wages and compensation to date          _____

C. Documented property damages to date          _____

D. Reasonably anticipated future medical and hospital expenses          _____

E. Reasonably anticipated lost wages          _____

F. Other documented items of damages (describe below)          _____

_____

                 TOTAL (A-F): _____ $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

_____

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  Peter S. Farrell | Date: | 10-02-2025 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

_____

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  Peter S. Farrell | Date: | 10-02-25 |
|---|---|---|

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

**AC Actions Involving the State/Municipality †***

AA1 Contract Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AC1 Real Property Action involving
Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
Municipality, MBTA, etc. (A)
AE1 Administrative Action involving
Commonwealth, Municipality, MBTA, etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (F)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal
Affairs of Entities (A)
BA3 Liability of Shareholders, Directors,
Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of
Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade
Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade
Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

\* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

†* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (F)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party ‡**

PA1 Contract Action involving an
Incarcerated Party (A)
PB1 Tortious Action involving an
Incarcerated Party (A)
PC1 Real Property Action involving an
Incarcerated Party (F)
PD1 Equity Action involving an
Incarcerated Party (F)
PE1 Administrative Action involving an
Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal
Injury/Property Damage (F)
B04 Other Negligence - Personal
Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/
Non-residential (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency,
G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149,
§§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court
Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only,
G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND ACCURATELY, THE CASE MAY BE DISMISSED.

E-FILED

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                    SUPERIOR COURT DEPARTMENT
                                  C.A. No.:

_____

MICHELLE GAUVIN and JEFFREY BERKOWITZ,
individually and as parents and next friends of their
minor children
        *Plaintiffs*,

  v.

WACHUSETT YOUTH FOOTBALL AND
CHEER, INC.,
*Defendant.*
_____

(2)

## **VERIFIED COMPLAINT**

## **I. PARTIES**

1. Michelle Gauvin and Jeffery Berkowitz ("Plaintiffs") are domestic partners and adults residing in Worcester County, Massachusetts. Ms. Gauvin is the parent and legal guardian of three minor children ("Child 1-3"), two of whom are minor children diagnosed with Autism ("Child 1" and "Child 2" respectively.) Child 3 is not diagnosed with autism. Mr. Berkowitz is a parent of a minor child ("Child 4") that is also part of the allegations set forth herein. Child 4 is not diagnosed with autism. Mr. Berkowitz is also the step-parent of Children 1-3.

2. As an individual diagnosed with Autism, Child 1 is an individual with a disability as defined by state and federal law.

3. Defendant, Wachusett Youth Football and Cheer, Inc. ("WYFC"), is a Massachusetts nonprofit corporation organized under the laws of the Commonwealth, operating youth football and cheerleading programs in Worcester County, Massachusetts, with a

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

principal address of 24 Sycamore Drive, Rutland, MA 01543 and is subject to suit in this Court.

## II. FACTUAL ALLEGATIONS

4. In or about July 2025, the Plaintiff , Michelle Gauvin, entered into a contract with the Defendant, WYFC, for her son, Child 1, to play youth football.   A true and accurate copy of the contract is attached hereto as Exhibit 1.

5. Entering into said contract and paying the registration fee of $300 as well as submitting other forms were conditions precedent to the Plaintiff's minor children participating in youth football with WYFC.

6. Plaintiffs have other children that played in the WYFC that were affected by the Defendant's actions set forth in this complaint.

7. According to its website, Defendant WYFC "is a non-profit youth sports organization that supports youth athletes who reside in the Wachusett region, located in Massachusetts. Towns supported are Holden, Paxton, Princeton, Rutland, and Sterling. We have options for all ages from 5 years to 13 years old. We offer multiple sports including Tackle Football, Flex (flag) Football, and Competitive Cheer!"

8. WYFC does not have a selective process for admittance of youth to play football and solicits the general public to the organization without exclusion.

9. WYFC offers and runs its programs at the Griffin Road Athletic Complex ("GRAC") located on Griffin Road in the town of Sterling, Worcester County, Massachusetts 01564.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

10. According to its website, WYFC leases, rents, is gifted or licensed to use the GRAC by the Town of Sterling , a municipality and municipally owned lands within and for Worcester County within the Commonwealth of Massachusetts.

11. Under G.L. c. 272, § 92A, a "place of public accommodation" is defined as any place, whether licensed or unlicensed, that is open to and accepts or solicits the patronage of the general public, including a broad range of establishments like hotels, restaurants, stores, theaters, museums, libraries, hospitals, and service establishments, as well as common areas of buildings and public transportation facilities. and is thus a place of public accommodation.

12. WYFC is a place of public accommodation and is subject to the provisions of G.L. c. 272, §§ 92A, 98, 98A, better known as the Massachusetts Public Accommodation Law.

13. Similarly, GRAC is a place of public accommodation pursuant to the same statute.

14. Despite his disability and Autism diagnosis, Child 1 participated in youth football with WYFC for the last three years, without incident, since approximately 2022, with the same or similar group of peers, players, and coaches.  2025 would have been Child 1's fourth consecutive year playing football with WYFC.

15. Prior to this year, Mr. Berkowitz served as a volunteer and coach for his children with WYFC.

16. Additionally, Child 1's grandfather volunteered as a football coach to coach Child 1.

17. The Plaintiff's family have participated in and supported WYFC for several years.

18. For reasons that remain unknown and for unspecified reasons, neither Berkowitz nor Child 1's grandfather were permitted by the Defendant to volunteer to coach this year despite their heavy involvement and presence in prior years without incident.

3

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

19. As a condition precedent for playing football, the Plaintiffs were required to submit a number of "registration forms" including medical clearance for their children to play football.

20. At all times relevant, Child 1 was medically cleared by his pediatrician or other clinician to play football which is consistent with his past three years of membership and history with the other players and coaches of WYFC.

21. Beginning in July 2025, Child 1 resumed participation in summer practices with his team. He attended practices regularly and played without incident through early September 2025.

22. On or about July 27, 2025, Child 1's step-parent, Mr. Berkowitz wrote to WYFC President, John Mandracchia, regarding an incident that occurred with the Football Director, Ben Bachant:

> I'm writing to express my concern about an incident that occurred with Ben, the football director, on **July 24, 2025**. At approximately **5:40 PM**, I was on the field throwing a football with my son and my step-sons. During that time, I had to discipline my son in a manner that was appropriate to the situation.
>
> To my surprise, Ben yelled across the field, stating that I could not "yell" at my son. I want to be clear that I was not acting inappropriately and was well within my rights as a parent. Ben then proceeded to say that I "wasn't supposed to be on the field," even though this occurred **before practice began**.
>
> His public remarks were unwarranted and, frankly, felt more like intimidation or bullying than constructive communication.
>
> At the first practice, Ben clearly stated that coaches would be held to the same standards as parents, with a **zero-tolerance policy** for inappropriate behavior. Unfortunately, his actions during this incident did not reflect those standards. As you know, both **WYFC** and **CMYF** maintain **zero-tolerance policies regarding bullying**, and I believe this situation falls within that category.

A true and accurate copy of this email is attached hereto as Exhibit 2A.

4

23. On July 30, 2025, Mandracchia responded, in part:

> After reviewing all perspectives, I've determined that there is not enough evidence to conclude that Ben's actions rose to the level of bullying. However, I have addressed your concerns with him directly and reminded him of the importance of maintaining a respectful and professional tone in all interactions—especially when speaking in front of others.
>
> WYFCC Vice President Tom Galvin, who is cc'd on this email, has been on the field everyday. Please inform him or myself immediately if there is any future conflict with Ben.

A true and accurate copy of the response is attached hereto as Exhibit 2B.

24. On September 2, 2025, Coach Patterson (father of Player 1[1]) accused Plaintiff, Mr. Berkowitz of "abusing" Ms. Gauvin's younger son ("Child 3") while disciplining him.

25. On September 3, 2025, Football Director Ben Bachant made remarks that specifically implied Child 1 was not suitable to play football based on his disability (autism) including: "Doesn't seem like he wants to be here"; "Doesn't put in much effort"; "Is unsafe on the line"; "He freezes on the line and is a danger to himself"; "Is he mentally mature enough to be on a team?"; and "What if he has a breakdown on the field?"

26. These remarks were made the day after Child 1's head coach, Jarred Louchart, praised the child on September 2 for his hard work, progress, and positive attitude.

27. On September 3, 2025, at approximately 1:41 p.m., WYFC President John Mandracchia telephoned the Plaintiffs and stated that Child 1 could not attend practice because of "multiple complaints from last week," but provided no details.

28. Prior to this time, Player 1 (son of Coach Patterson) and Player 2[2] have repeatedly bullied Child 1 by throwing him to the ground and telling him, "you suck" and "you

---

[1]  A pseudonym.

[2]  Also a pseudonym.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

don't belong." Despite Plaintiff's formal complaints, WYFC took no action against those players.

29. While this behavior went unaddressed and no sanction was meted out, WYFC immediately excluded Child 1 based on unverified allegations.

30. Player 1 and Player 2 were treated differently than Child 1.

31. Upon information and belief, Player 1 and Player 2 do not have a disability.

32. Despite this behavior and conduct and WYFC's "Code of Conduct," upon information and belief, neither Player 1 nor Player 2 suffered any consequences for this behavior targeting Child 1 based on his disability.

33. This is disparate treatment based on disability.

34. On September 3, 2025 at 2:12 PM, Mr. Berkowitz followed up with Manadracchia following the telephone conversation earlier and to address Coach Patterson and the incident that occurred on September 2:

> Towards the end of practice last night I was having a discussion with my step son. He had kicked over a a couple water bottles and his mother had asked him to pick it up and he snapped back at her and said "NO! i'm not picking it up". I turned back to Jameson and told him "enough with the back talk" (as this has been an on going behavioral issue). I then explained that "the back talk is not acceptable from the older 3 (his brothers and my son) and it's not acceptable from him either. I asked if he understood and while looking at the ground and jumping around, I grabbed his arm to hold him still and asked him to make eye contact with me because it's a sign of respect to look a person in the eye when they're talking to you and asked him again if he understood and he said yes.
>
> It was at this time that coach Patterson and began to, what I perceived as telling me how to parent my child. I was then defensive and told him, I didn't ask him for his parenting advice.
>
> In the moment I felt I was being judged on my parenting and being told how to parent my child. Certainly this situation could have been handled better by myself, and I intend to apologize to coach Patterson upon our next meeting.

A true and accurate copy of this email is attached hereto as Exhibit 3.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

35. On September 3, 2025 at 2:48 PM, Ms. Gauvin sent an email to the WYFC Board of

Directors.  A true and accurate copy of said email is attached hereto as Exhibit 4.

36. In her email, Ms. Gauvin stated:

> I would like to remind the Board that [Child 1] is a child with a diagnosed disability
> and has been reported to ALL his coaches over the past 3+ years. Under the
> Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act,
> children with disabilities are entitled to equal participation in community programs,
> including recreational and athletic activities. Excluding him from practice without
> clear documentation, communication, or reasonable accommodation may
> constitute discrimination based on disability.
>
> Additionally, Massachusetts state law (M.G.L. c. 151B and related
> education/athletics statutes) prohibits discrimination against individuals with
> disabilities in public accommodations and programs open to the community, such
> as youth sports leagues.
>
> I respectfully request the following:
>
> 1. A written explanation of the specific complaints and incidents that led to
>    this decision.
> 2. A clear outline of the league's policies and procedures for handling
>    behavioral concerns.
> 3. An opportunity to meet and discuss constructive solutions, including
>    reasonable accommodations, so that [Child 1] can continue to participate
>    fully and safely in this program.
>
> [Child 1] has been part of youth sports for several years without issue, and it is
> heartbreaking to see him excluded without clarity or support. My hope is that
> we can work collaboratively to ensure compliance with the law, and—more
> importantly—that every child, regardless of ability, is given the chance to grow,
> learn, and belong through this program.
>
> Please respond in writing at your earliest convenience so we can resolve this
> matter promptly and appropriately.

37. No written response was forthcoming.

38. Ms. Gauvin's email communication to the WYFC Board of Directors was a protected

petitioning activity protected by operation of law.

7

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

39. Despite never having been informed by anyone at WYFC that Patterson alleged Berkowitz was abusing his own stepson, Mr. Berkowitz was banned from practice and subject to a bad faith and retaliatory filing of a complaint alleging abuse and neglect pursuant to G.L. c. 119 §51A.

40. The act of filing a complaint pursuant to G.L. c. 119 §51A was retaliation and in violation of both state and federal law and was done so in bad faith.

41. Later on September 3, 2025, while Ms. Gauvin, was walking to the field to watch her children at practice, Leah Leahy, WYFC's Fundraising and Marketing Director, along with Mandracchia, and Bachant, confronted Gauvin.

42. Leahy told Plaintiff Gauvin that, since Child 1 was not permitted at practice, Ms. Gauvin also could not remain at practice to watch her other children, and that she was only permitted to, "drop her kids off."

43. After Bachant made his discriminatory remarks about Child 1, Leahy added Child 1's presence was a "safety issue" because, if Child 1 were to run the ball, his teammates might "choose not to block for him" due to the alleged statements he supposedly made.

44. Later that same evening, September 3, 2025, at approximately 5:50 p.m. at practice, Mandracchia gave a different explanation, claiming Child 1 had allegedly threatened to "gouge out eyeballs" of other players and added additional unspecified reasons why Child 1 should not play at all.

45. Mandracchia gave no thought or consideration to the fact that even if Child 1 said he was going to "gouge out eyeballs," that such a statement was, more likely than not, a manifestation of Child 1's disability - Autism.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

46. At no time did the Defendant consider any type of reasonable accommodation or any consideration of Child 1's disability or that any statement allegedly made by Child 1 was an actual and true threat.

47. The allegations made by the Defendant are a pretext to exclude Child 1 when there is no evidence of Child 1 having made any statement that was a true threat to the health, safety or welfare of any other player, coach or individual participant or spectator.

48. On September 4, 2025 at 7:57 AM, Mandracchia sent an email upholding Child 1's exclusion, but again provided no written complaints, documentation, or meaningful opportunity for Plaintiff to review or respond to the allegations that lead to her son's exclusion.  A true and accurate copy of said email is attached hereto as Exhibit 5A.

49. Ms. Gauvin responded at 8:04 AM and again requested information and the specifics about the alleged comments Mandracchia claimed Child 1 that lead to his exclusion by the Defendant.  A true and accurate copy of this email is attached hereto as Exhibit 5B.

50. Ms. Gauvin asserted a formal complaint about two other players, Player 1 and Player 2 when it was clear to her that her child, Child 1, was being treated differently than other non-disabled players.   A true and accurate copy of this email is attached hereto as Exhibit 5C.

51. Mandracchia responded six minutes later at 8:10 AM and stated, "As I told you yesterday, you will get a redacted copy of the final report…" and "When the final decision is made, and if there's punishment, you have the right to appeal in front of the board."  A true and accurate copy of this email is attached hereto as Exhibit 5D.

52. Mandracchia sent another email at 8:47 AM and stated, "This isn't my first time doing this and that's not the first time I heard this type of response…I would like to remind

9

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

you that this is a private club. The board has the right to remove children and parents if we feel it is in the best interests of the organization." A true and accurate copy of this email is attached hereto as Exhibit 5E.

53. Mandracchia's commentary set forth in his email fails to account for the fact that WYFC is a place of public accommodation and is subject to both state and federal law.

54. In continuing in order of events, next, shortly after receiving Mandracchia's missive, on September 4, 2025, at approximately 9:25 a.m., Ms. Gauvin called the Town of Sterling, as the owner and operator of GRAC, to advise that WYFC was attempting to exclude and ban her minor children and their family from participating in youth football that is associated with the Town of Sterling, by, among other things, the use of the GRAC.

55. The Director of Recreation for the Town of Sterling, Tyler Riel, confirmed to Ms. Gauvin that she had every right to attend practices and games to observe their children, despite WYFC's repeated assertions that they could not.

56. The Plaintiff's complaint and report to the Town of Sterling was a protected petitioning activity and the complaint and report of unlawful discrimination is protected conduct.

57. Ms. Gauvin responded to Mandracchia's email on September 4, 2025 at 9:55 a.m. In that email, Ms. Gauvin set forth her response to the email of September 4, but also the telephone conversation of September 3, 2025 at 1:41 p.m. when the Plaintiffs were informed that Child 1 was excluded from practice. A true and accurate copy of this email is attached hereto as Exhibit 5F.

58. Ms. Gauvin again requested the specifics of the complaints and reports of misconduct by Child 1:

**Accordingly, I request the following in writing:**

1. **Copies of all written reports/complaints** that led to Micah's exclusion.

2. A **clear timeline** of when these reports were made, by whom, and how they were documented.

3. The league's **written policies and procedures** for handling complaints, investigations, and disciplinary decisions, including any appeal process.

4. **Confirmation** that my bullying complaint against Clayton and Jaxson will be investigated with **equal seriousness**, including their **temporary suspension** pending the outcome.

5. **Clarification** on why Jeff was banned from attending practices without any direct communication to parents regarding the accusation against him.

6. **Confirmation** that I am permitted to attend practices with my other children while this matter is pending.

Please respond in writing no later than **five (5) business days** from today, and **preserve all related documents and communications**, including reports, emails, texts, internal messages, and coach notes concerning Micah, Jeff, and my family.

A true and accurate copy of this email is attached hereto as Exhibit 5F <u>supra</u>.

59. To date, none of this information has been produced because it either does not exist or the Defendant has no intention of producing it.

60. On September 5, 2025, Mandracchia emailed the Plaintiffs and stated, "I received a call today from the Sterling Recreation Department alerting me of your report. They mentioned that we (Wachusett) were handling the situation correctly and did not believe that you had a basis to claim discrimination." A true and accurate copy of this email exchange is attached hereto as Exhibit 6A et seq.

61. Mandracchia continued, "I spoke to the board about your action and we unanimously agreed that your unprovoked attempt to hinder the organization's ability to function in Sterling will not be tolerated." <u>Id</u>.

62. Incredibly, Mandracchia then doubled down and said, "We voted unanimously to remove you both, and [Children 1, 2 and 4] from the program. As a sign of good faith, we will offer a refund for the kids in exchange for a return of all equipment. <u>Id</u>.

63. What ensued next was an email exchange where Mandracchia explained that only Child 1, 2 and 4 were "banned" and Child 3, Ms. Gauvin's biological child was not banned

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

so long as he was accompanied by his father, Mike Taverna, and not Ms. Gauvin. To date, none of this information has been produced because it either does not exist or the Defendant has no intention of producing it. Copies of the email exchange are attached hereto as Exhibits 6A-6M.

64. On September 5, 2025, Child 1's biological father, Keith Lovejoy, learned that his sons were, "being terminated from the Wachusett 10U team. As it was explained to me, their mother Michelle and the board had some issues" and sent an email to Mandracchia. He sent the email at 8:47 PM. A true and accurate copy of this email is attached hereto as Exhibit 7A.

65. In response, Mandracchia responded, "I can explain tomorrow at 10 a.m. with a few other board members. I'll send the Google meet now." This was sent at 9:50 PM. Id.

66. Mandracchia scheduled an ad hoc, on-the-fly meeting with the Board for which he provided no notice or an opportunity to be heard.

67. Lovejoy responded at 9:37AM the next morning, Saturday, September 6, 2025 and stated, "I will not be able to make the meeting today. I was given less than a days notice of this meeting. I cannot change my plans to accommodate this meeting." A true and accurate copy of this email is attached hereto as Exhibit 7B.

68. Mandracchia responded again, this time at 3:48 PM on Saturday, September 6: "It's okay, I know it was short notice for you and it probably feels a little out of the blue. There is a long story but after we found out that we were reported to the state and to the Town of Sterling by Michelle and Jeff, we unanimously decided that we do not want to offer a solution. If we allow their kids to play, it would the the [sic] door open

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

for them to make baseless claims and to be disrespectful to our board and coaching staff." A true and accurate copy of this email is attached hereto as Exhibit 7C.

69. Lovejoy responded, "I wish we could have come to an amicable resolution as my children have put in a lot of work. And we are devastated upon finding out they wouldn't be allowed to remain with the team." A true and accurate copy of this email is attached hereto as Exhibit 7D.

70. The Defendant failed to advise or inform the Plaintiffs of any violation of the Code of Conduct, rule infraction or other issue that would warrant Child 1's exclusion and dismissal from the program.

71. When the Plaintiff spoke up about Child 1's treatment, exclusion, and status as a disabled individual, WYFC and its Board, coaches and other individuals retaliated against Plaintiff for her outspoken advocacy on behalf of her disabled child, Child 1.

72. Exclusion of Child 1 is discrimination and the Defendant's exclusion of the Plaintiff's other children from the program is a breach of contract, among other violations, are acts of rooted in unlawful discrimination and retaliation in violation of both state and federal law.

73. On September 12, 2025, the Plaintiffs filed the instant action with the Massachusetts Commission Against Discrimination (MCAD) and requested expedited removal to the Superior Court pursuant to G.L. c. 151B §9 and 804 CMR (12)(a) and (b).

74. Shortly thereafter, the Investigating Commissioner allowed the request for expedited removal to the Superior Court.

75. On September 15, 2025, John Mandracchia sent the following email to the Plaintiffs:

The football equipment remains league property. If they are not returned by this Friday, 9/19/26, <u>the league will pursue further steps including replacement cost recovery and, if necessary, a report with local authorities for lost/stolen property or a civil claim to recover costs.</u>

A true and accurate copy of this email is attached hereto as Exhibit 8.

76. On September 26, 2025, the Department of Children and Families ("DCF") issued a finding that did not substantiate the allegation which resulted in DCF closing "the case."

77. On Friday, September 26, 2025, the Defendant, through its president, Mandracchia and Leahy, its Vice President, issued, in part, the following public statement:

To set the record straight, the decision to ask this family to leave was not related to their child or children. <u>It was due to the parents' actions, which violated our Code of Conduct.</u> Each year, we require all parents and guardians to sign this Code of Conduct before conditioning camp begins. This policy is in place to ensure a smooth and positive season, with the focus remaining on the development and well-being of our athletes.

<u>When someone violates the Code of Conduct,</u> it is at our discretion to take appropriate action, including asking them to leave the program. This standard is clearly outlined in the Code of Conduct, and we are committed to upholding it.

We hope this statement clarifies the situation and allows us to move forward with a successful and drama-free season, focused on what truly matters: the growth, development, and safety of our athletes.

A true and accurate copy of said statement is attached hereto as Exhibit 9.

14

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

### III. CAUSES OF ACTION

**Count I – Injunctive Relief**

77. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

78. Plaintiffs seek immediate and permanent injunctive relief to prevent the exclusion of their minor children from participation in WYFC's football program.

79. Plaintiffs and their children have demonstrated a likelihood of success on the merits of their claims for disability discrimination, retaliation, breach of contract, and related statutory violations.

80. Absent injunctive relief, Plaintiffs' minor children will suffer irreparable harm by being excluded from the Fall 2025 football season, an opportunity for social, emotional growth, educational, and athletic development that cannot be restored once lost.

81. Monetary damages alone cannot adequately compensate for the loss of participation, community standing, and the stigma associated with exclusion on the basis of disability and retaliation.

82. The balance of harms favors Plaintiffs, as reinstating the children imposes minimal burden on Defendant while preventing severe and irreparable harm to the children's rights and well-being.

83. Granting injunctive relief will serve the public interest by ensuring compliance with anti-discrimination laws and equal access to community programs.

84. Plaintiffs therefore request that this Court enter immediate and permanent injunctive relief reinstating Plaintiffs' children into WYFC's football program and enjoining Defendant from further retaliatory or discriminatory conduct.

WHEREFORE, Plaintiffs respectfully request that this Court grant injunctive relief by reinstating Plaintiffs' children to the WYFC program, enjoin Defendant from further discrimination or retaliation, award costs and attorneys' fees, and grant such other equitable relief as the Court deems just.

### Count II – Declaratory Judgment (G.L. c. 231A)

85. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

86. An actual controversy exists between Plaintiffs and Defendant regarding Plaintiffs' rights under the ADA, Section 504, M.G.L. c. 151B, M.G.L. c. 272, M.G.L. c. 93, and related laws.

87. Plaintiffs contend that Defendant's exclusion of Child 1 from the program constitutes unlawful discrimination and retaliation, while Defendant contends it acted within its authority.

88. Pursuant to G.L. c. 231A, Plaintiffs are entitled to a judicial declaration of their rights and Defendant's duties.

89. A declaratory judgment will resolve the uncertainty and provide guidance to the parties regarding their rights and obligations going forward.

WHEREFORE, Plaintiffs respectfully request that this Court declare that Defendant's exclusion of Plaintiffs' children was unlawful, that Defendant's conduct violated federal and state anti-discrimination laws, and that Plaintiffs are entitled to equal access and participation, together with costs and reasonable attorneys' fees.

16

**Count III – Disability Discrimination (ADA, Section 504, M.G.L. c. 151B)**

90. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

91. Plaintiff's minor child, Child 1 is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 705(20).

92. Child 1 has been diagnosed with Autism Spectrum Disorder and, despite this diagnosis, successfully participated in WYFC programs for four consecutive years without incident.

93. Defendant is an entity that is a place of public accommodation subject to the requirements of the ADA, Section 504, and M.G.L. c. 151B.

94. Defendant discriminated against Child 1 on the basis of disability by excluding him from football practices and games, despite medical clearance and satisfactory participation.

95. Defendant further discriminated by refusing to provide reasonable accommodations, failing to engage in any interactive process, and denying due process protections afforded under law.

96. The Plaintiffs asserted lawfully protected complaints of discrimination to both WYFC and the Town of Sterling regarding these actions and unlawful conduct.

97. Defendant's actions to exclude Child 1 and the Plaintiffs' other minor children were intentional, malicious, and in reckless disregard of Plaintiffs' federally and state secured rights to be free from unlawful discrimination and retaliation.

17

98. As a direct and proximate result, Plaintiffs and their children suffered loss of participation, emotional distress, humiliation, and other compensable damages for which they reserve the right to bring suit and file in the Superior Court.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, declare Defendant's conduct unlawful, award compensatory damages, punitive damages where available, attorneys' fees, costs, and such other relief as the Court deems just and proper.

### Count IV – Retaliation (ADA, Section 504, M.G.L. c. 151B §4)

99. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

100.    Plaintiffs engaged in protected activity by reporting discrimination to WYFC's Board of Directors, by petitioning the Town of Sterling, and by asserting rights under the ADA, Section 504 and 151B.

101.    Defendant, through its officers and agents, retaliated against Plaintiffs and their children for engaging in such protected activity.

102.    Retaliatory acts included:

(a) admitting to Keith Lovejoy, in writing, that the Plaintiffs were being banned for reporting the Defendant to the state and town;

(b) contacting or causing to be contacted the Department of Children and Families alleging a bad faith filing of an allegation of abuse and neglect that was summarily unsupported and unsubstantiated;

(c) banning Plaintiffs' minor children from practices, and expelling Children 1, 2 and 4 from the program; and

18

(d) Defendant's subjecting the Plaintiffs to intentional threats, intimidation and

coercion by demanding they return the children's football gear and equipment to

the Sterling Police Department without any reasonable or justifiable basis for doing

so.

103.    Defendant's retaliatory actions would dissuade and chill a reasonable parent or

participant from engaging in protected activity to report unlawful discrimination on the

basis of disability.

104.     The Defendant's conduct constitutes unlawful retaliation in violation of state and

federal law.

105.    As a result, Plaintiffs and their children have suffered damages, including emotional

distress, reputational harm, and loss of participation in community programs.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in

their favor, award compensatory damages, punitive damages where available, attorneys'

fees, costs, and such further relief as the Court deems just.

### Count V – Massachusetts Public Accommodation Law
### (M.G.L. c. 272, §§ 92A, 98, 98A)

106.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully

set forth herein.

107.    WYFC operates as a youth sports organization open to all children in the Wachusett

region and solicits the participation of the general public.

108.    WYFC is a community-based organization and program.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

109.    WYFC conducts its activities at the Griffin Road Athletic Complex, property of the Town of Sterling, and is therefore a place of public accommodation under M.G.L. c. 272, § 92A.

110.    By excluding Child 1 on the basis of his disability, disparaging him, and banning his family, Defendant denied Plaintiffs the "full and equal accommodations, advantages, facilities, and privileges" guaranteed by law.

111.    Defendant's conduct constitutes unlawful discrimination and retaliation under M.G.L. c. 272, §§ 98 and 98A.

112.    As a direct and proximate result, Plaintiffs and their children suffered injuries and damages resulting from unlawful acts including humiliation, reputational damage, and denial of equal access to a public accommodation.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, declare Defendant's conduct unlawful, award compensatory damages, treble damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

### Count VI – Massachusetts Civil Rights Act (M.G.L. c. 12, §§ 11H–I)

113.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

114.    Plaintiffs have secured rights under the ADA, Section 504, and Massachusetts law to equal participation in public accommodations free from discrimination.

115.    Defendant, through threats, intimidation, and coercion—including overt threats, intimidation and coercion expressed, *inter alia*, by Mandracchia's emails – interfered with the exercise of those rights afforded by state and federal law.

116.    Defendant's unlawful acts and conduct include, but are not limited to:

20

(a) threats of exclusion;

(b) threats of state agency reports and actual reports alleging unsupported and fabricated claims of abuse and neglect that were filed in bad faith;

(c) intimidation by intimating that the "board" answers to no one and can deprive the Plaintiffs and their minor children of equal access and equal participation in a place of public accommodation free from discrimination without any meaningful participation in an interactive process, due process or any process.

(d) coercive demands that the Plaintiffs return equipment to the police department when no other family is forced or constrained to do something he would not otherwise have done;

(e) coercive demands threatening that if the Plaintiffs did not return the children's football equipment by an arbitrary date that the Defendant would report the Plaintiffs to the "authorities," report the equipment as "stolen" and initiate a civil action for damages and "recovery."

(f) coercive bans from participation based on no evidence of unlawful conduct or a violation of the so-called "Code of Conduct."

117. By its acts and conduct, the Defendant interfered with the Plaintiff's exercise of those rights to be free from discrimination as provided for by state and federal law.

118.    Defendant's actions were deliberate, malicious, and designed to chill Plaintiff's advocacy on behalf of her disabled child, other children and household members.

119.    Defendant's conduct constitutes violations of the Massachusetts Civil Rights Act, G.L. c. 12, §§ 11H–I.

21

120.    As a result, Plaintiff and her children have suffered injuries including loss of rights, emotional distress, and other damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, issue appropriate equitable relief, award compensatory and punitive damages, attorneys' fees, costs, and such further relief as the Court deems just.

### Count VII – Massachusetts Equal Rights Act (M.G.L. c. 93, § 102) (Retaliation)

121.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

122.    The Massachusetts Equal Rights Act guarantees that, "All persons within the Commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

123.    As a direct and proximate result of the Defendant's actions, the Plaintiff, Michelle Gauvin, was denied the full and equal benefit of all laws and proceedings, by being subject to discrimination on the basis of her sex, by being excluded from all football activities of three out of four of her minor children.

124.    The Defendant did not exclude Ms. Gauvin's other child (Child 3) provided that he was accompanied by his biological father.

125.    The Defendant treated Ms. Gauvin disparately based on her sex.

22

126.    This exclusion also constitutes discrimination on the basis of sex, in violation of state and federal law and is also retaliation for Ms. Gauvin's protected activity and conduct of reporting and asserting claims of unlawful discrimination on behalf of her minor son, Child 1.

127.    By paying registration fees and fulfilling conditions of participation, Plaintiff and her children entered into a contractual relationship with Defendant.

128.    Defendant retaliated against Ms. Gauvin by banning her children from participation and making exception when one child was accompanied by his father.

129.    Any other reason asserted by the Defendant for Ms. Gauvin's exclusion is nothing more than a pretext and an unveiled attempt to deflect from a light being shown on its own unlawful conduct.

130.    As a result, Plaintiff and her children have sustained damages, including emotional harm, reputational injury, and denial of rights guaranteed under Massachusetts law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, declare Defendant's conduct unlawful, award compensatory damages, punitive damages, attorneys' fees, costs, and such further relief as the Court deems just.

**Count VIII – Breach of Contract and/or Promissory Estoppel**

131.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

132.    Plaintiffs entered into a contract with Defendant by paying registration fees and meeting all conditions precedent for participation.

133.    Defendant accepted the benefits of this contract by permitting Plaintiffs' children to practice and participate until September 2025.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

134.    Defendant breached the agreement by arbitrarily expelling Plaintiffs' children and the entire family, without just cause or adherence to any stated policies.

135.    In the alternative, Plaintiffs reasonably relied to their detriment on Defendant's promises and assurances of participation to their detriment.

136.    Defendant's breach and repudiation caused Plaintiffs to suffer damages, including financial loss, emotional distress, and denial of participation in youth sports.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, award compensatory damages, consequential damages, attorneys' fees where permitted, costs, and such further relief as the Court deems just.

### Count IX – Defamation

137.  Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

138.  The Defendant stated the Plaintiffs violated the Code of Conduct and published that statement to third parties.

139.  These statements were false when made.

140.  The Defendant knew or should have known that publicly making such statements about the Plaintiffs may prejudice the plaintiffs' profession or business.

141.  These statements constitute defamation per se.

142.  These statements were published to third parties, including parents, coaches, and community members, and were understood as statements of fact.

143.  Defendant's statements were false, malicious, and not privileged.

144.  As a direct result, the Plaintiffs suffered reputational harm, stigmatization, and a hostile environment that excluded the Plaintiffs and their family from equal access and equal

opportunity of participation free from discrimination, discriminatory animus, retaliation and the related hostile environment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, award compensatory damages, punitive damages where available, attorneys' fees, costs, and such further relief as the Court deems just.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A) Enter judgment in favor of Plaintiffs on all counts;

B) Declare that Defendant's conduct violated G.L. c. 272, G.L. c. 93, and G.L. c. 12;

C) Issue injunctive relief requiring Defendant to reinstate Children 1, 2 and 4 to the program;

D) Order the Respondent to take immediate remedial action, including but not limited to:

    i)    Retaining and hiring expert consultants to provide training and education to the Defendant its volunteers, coaches, staff and players regarding discrimination on the basis of membership in a protected class, to wit, (disability); and

    ii)    Draft, prepare and immediately adopt anti-discrimination policies and disseminate said policies to all board members, coaches, volunteers and players and include such policies with materials upon registration for WYFC.

E) Award compensatory damages for emotional distress, humiliation, and loss of

participation;

F) Award statutory damages and attorneys' fees as permitted by law; and

G) Grant such further relief as this Court deems just and proper.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

MICHELLE GAUVIN and JEFFREY
BERKOWITZ, Individually and as Parents and
Next Friend of Their Minor Children,

By their attorney,

*Peter S. Farrell*
Peter S. Farrell (BBO #656512)
Farrell Law Group PLLC
Date: October 2, 2025          46 Railroad Avenue, Suite 204
Duxbury, MA 02332
Tel: (781) 236-3620
pfarrell@farrelllg.com

26

Michelle Gauvin

Date: 10/2/25

Jeffrey Berkowitz

Date: 10/2/25

**ASSOCIATION**

PARTICIPANT NAME

| #11 | 5th grade | 10 |
|---|---|---|
| JERSEY # | GRADE | AGE (7/31) |

*michelle Gauvin*

PARTICIPANT PARENT/GUARDIAN NAME

| | | 5088267899 |
|---|---|---|
| HOME PHONE | WORK PHONE | CELL PHONE |

11

I, Hereby, With My Signature, Do Certify That The Information Below Has Been Collected And Verified By The Means, As A Minimum, As Instructed In The AYF National Rulebook And/Or Operations Manuel, Current Version.

Conference Verification Signature/STAMP

**OFFICIAL PLAYER CERTIFICATION**
**LEAGUE USE ONLY**

Association Verification Signatures/STAMP

| DATE OF BIRTH: | Age As of 7/31 | GRADE/AGE CERTIFICATION | PARTICIPANT CONTRACT | MEDICAL CLEARANCE | WAIVER/ RELEASE | EMERGENCY MEDICAL CONSENT | SCHOLASTICS |
|---|---|---|---|---|---|---|---|
| ▮▮▮ <br> Month / Day / Year | 10 | | | | | | |

| | GAME DATE | PLAYER CHECK | CODE | | GAME DATE | PLAYER CHECK | CODE | |
|---|---|---|---|---|---|---|---|---|
| **R** JAMBOREE | | | | JAMBOREE | | | | **P** |
| **E** Week 1 | | | | Week 11 | | | | **O** |
| **G** Week 2 | | | | Week 12 | | | | **S** |
| **U** Week 3 | | | | Week 13 | | | | **T** |
| **L** Week 4 | | | | Week 14 | | | | |
| **A** Week 5 | | | | Week 15 | | | | **S** |
| **R** Week 6 | | | | Week 16 | | | | **E** |
| | Week 7 | | | | Week 17 | | | | **A** |
| **S** Week 8 | | | | Week 18 | | | | **S** |
| **E** Week 9 | | | | Week 19 | | | | **O** |
| **A** Week 10 | | | | Week 20 | | | | **N** |

INSTRUCTIONS: PLAYER CHECK Will Enter Date, Verify The Identity, Of Each Participant, Initial Each Participant Card,
CODE: OK = Everything Verified, I = Sick/Injured, A = Absent / Dropped
**ALL MUST BE CHECKED IN / VERIFIED PLAYING OR NOT / ENTER DETAIL UNDER "CODE"**

| Medical Inurance | Name of Insurance Carrier | Policy # |
|---|---|---|
| | *Mass health* | *Na* |

| Football or Cheer | Registration Fee | Check# Cash |
|---|---|---|
| | $ | |

---

**GRAY AREAS FOR OFFICIAL USE ONLY !!**

Association: *Wachusett Youth Football & Cheer*   Division: *10U Tackle*   Team: _____

Jersey Number Assigned: *#11*   Equipment / Uniform Issued: *No*   Returned: *No*

---

**PERMISSION TO PARTICIPATE**

I acknowledge that I am fully aware of the potential dangers of participation in any sport, and I fully understand that participation in football, cheerleading, dance and/or step may result in SERIOUS INJURIES, PARALYSIS, PERMANENT DISABILITY AND/OR DEATH. Furthermore, I fully acknowledge and understand that protective equipment does not prevent all participant injuries. I, the parent/guardian of the above-named participant, do hereby give my approval for my child/ward to participate, and further assert that I have verified with my child/wards' physician, and in my opinion, my child/ward is physically fit and can participate without limitation in any and all Local, Regional, National, League/Conference, Association and team/squad activities, including transportation to and from the activities by a licensed driver.

**SCHOLASTIC FITNESS**                                                                                           Initial:_____

I am of the opinion that my son/daughter/ward is scholastically fit and would benefit by participation in this program. I agree to submit a copy of my son/daughter/ward's last completed grade, end of year/last complete report card or a written statement of scholastic fitness from the school administration.

**HELMET WAIVER (for football participants)**                                                      Initial: _____

We acknowledge, AND WE understand the risks involved in my CHILD/WARD, my playing FOOTBALL, which is a collision sport: the NOCSAE committee has adopted the following warning to be read by, and signed by, both the parent/guardian and participant. "DO NOT USE THIS HELMET TO BUTT, RAM OR SPEAR AN OPPOSING PLAYER. THIS IS IN VIOLATION OF FOOTBALL RULES AND CAN RESULT IN SEVERE HEAD, BRAIN OR NECK INJURY, PARALYSIS OR DEATH AND POSSIBLE INJURY TO YOUR OPPONENT. THERE IS A RISK THAT THESE INJURIES MAY ALSO OCCUR AS A RESULT OF AN ACCIDENTAL CONTACT WITHOUT INTENT TO BUTT, RAM OR SPEAR, NO HELMET CAN PREVENT ALL SUCH INJURIES."

**EQUIPMENT UNIFORM RESPONSIBILITY**        Parent/Guardian Initial:_____   Player Initial:_____

I assume full responsibility for any and all equipment/uniforms loaned to my child/ward and I agree to promptly return, upon request, the uniform and other equipment in as good condition as when received except for normal wear and tear. If I fail to adhere to this policy, I will be responsible for and promptly pay the replacement cost of such equipment.

**CODE OF CONDUCT**                                                                                              Initial:_____

The Ideology Of Youth Sports Including This Program Is To Promote Good Understanding And Fundamental Knowledge Of The Sport. It Is Also Critical That Good Sportsmanship Including The Ability To Always Conduct Oneself In An Appropriate Manner Of Positive Accord Both On And Off The Field. It Is Understood That Any Incident Considered Detrimental To The Pursuit Of This Ideology Will Not Be Tolerated. It Will Be Addressed In Accordance With The Statutes Of The Association, Conference, Current National Affiliation, State and Local Laws, And May Result In Dismissal From The Program And The Inability To Participate In Any Future Related Activities Of The Association. This Code Of Conduct Applies To All Involved With The Program Including But Not Limited To, The Football Players, Cheerleaders, Spirit Participants, Parents And Guardians.

Initial: _____

*michelle Gauvin*

PRINT Parent/Guardian Name        Parent/Guardian Signature        Date Signed

---

**NOTE:** This form as with any and all forms used by your Association should be reviewed by your local counsel for compliance with any state or local statuses. This form should be kept on file for a minimum of 7 years.

## PARENT OR GUARDIAN INFORMATION

| Parent/Guardian 1 Name: | *michelle Gauvin* | | | |
|---|---|---|---|---|
| Address: | ███████████████████████████████████████ | | | |
| Home Phone: | | | | |
| Employer: | | | | |

| Parent/Guardian 2 Name: | | | | |
|---|---|---|---|---|
| Address: | | City: | | State: | Zip: |
| Home Phone: | | Daytime Phone: | | Email: | |
| Employer: | | | | |

| Parent/Guardian 3 Name: | | | | |
|---|---|---|---|---|
| Address: | | City: | | State: | Zip: |
| Home Phone: | | Daytime Phone: | | Email: | |
| Employer: | | | | |

## FAMILY MEDICAL INSURANCE

| Carrier: | *Mass health* | Group: | |
|---|---|---|---|
| Policy #: | *Na* | Group #: | |
| Policy Holder Name: | | ██████ | |
| Family Physician's Name: | ██████████████ | | |
| Doctor's Address: | ████████ | | |
| Phone: | ███████████████████████████ | | |

## EMERGENCY MEDICAL INSURANCE

| Preferred Hospital(s): | *Boston childrens* | | |
|---|---|---|---|
| **EMERGENCY CONTACT:** | *Michelle Gauvin* | **Phone:** *5088267899* | **Relationship:** *Mother* |

Please list any medical conditions (allergies, asthma, etc.) And medications being taken by the participant named above. Please list any other information you may deem relevant, and helpful to emergency medical personnel. (please note if no information is given and the words "none" or "n/a" is not filled in then, "none" will be assumed.

| Allergies: | *chickpeas* |
|---|---|
| Medical Conditions: | *autism* |
| Other: | |

*I as evidenced below hereby grant permission for my child/ward to participate in any and all,

   *Wachusett Youth Football & Cheer*   (Association name) and, American Youth Football, Inc. program(s) event(s), including but not limited to, athletic, social and/or fundraising activities. I further consent to the administration of any and all medical treatment necessary to stabilize and or treat any medical condition or medical emergency to which my child/ward is afflicted. I understand that this authorization is given prior to the need for medical care, but given in advance to avoid any unnecessary delay in emergency treatment which the attendant and/or medical professional may deem advisable in the exercise of their best judgment.

|  *michelle Gauvin* | | |
|---|---|---|
| *Print Parent/Legal Guardian Name | *Signature Parent/Legal Guardian | *Date |

The original Emergency Medical Treatment, Consent and Information form should travel with the coach and a copy should be kept at the administrative office of the sports organization. Due to privacy concerns, completed forms should be stored in a secure location with access restricted to those on a need to know basis for the purpose of medical care.

## Fw: Thursdays incident

**jeff berkowitz** <jeff_berkowitz@yahoo.com>                    Wed, Jul 30, 2025 at 10:27 PM
To: Michelle Gauvin <gauvinm86@gmail.com>

Sent from Yahoo Mail for iPhone

On Wednesday, July 30, 2025, 8:29 PM, John Mandracchia <president@wachusettyfc.org> wrote:

Hii Jeff,

At WYFCC, we take every report seriously by completing an investigation. In this case, I had a chance to speak with Ben, as well as with coaches who were present to better understand the situation



After reviewing all perspectives, I've determined that there is not enough evidence to conclude that Ben's actions rose to the level of bullying. However, I have addressed your concerns with him directly and reminded him of the importance of maintaining a respectful and professional tone in all interactions —especially when speaking in front of others.

WYFCC Vice President Tom Galvin, who is cc'd on this email, has been on the field everyday. Please inform him or myself immediately if there is any future conflict with Ben.

Thanks -John Mandracchia

On Sun, Jul 27, 2025 at 9:59 PM jeff berkowitz <jeff_berkowitz@yahoo.com> wrote:
Hi John,
Thank you for getting back to me. Yes, most of the coaching staff plus a host of parents were all present.
Thank you

Sent from Yahoo Mail for iPhone

On Sunday, July 27, 2025, 9:08 PM, John Mandracchia <president@wachusettyfc.org> wrote:

Hi Jeff,
Thanks for bringing this to our attention. We will investigate this incident and follow up with you. Quick question, were others around besides you and Ben that would have observed this incident?

2A

Dear JohnMandraccha,

I'm writing to express my concern about an incident that occurred with Ben, the football director, on July 24, 2025. At approximately **5:40 PM**, I was on the field throwing a football with my son and my step-sons. During that time, I had to discipline my son in a manner that was appropriate to the situation.

To my surprise, Ben yelled across the field, stating that I could not "yell" at my son. I want to be clear that I was not acting inappropriately and was well within my rights as a parent. Ben then proceeded to say that I "wasn't supposed to be on the field," even though this occurred **before practice began.**

His public remarks were unwarranted and, frankly, felt more like intimidation or bullying than constructive communication.

At the first practice, Ben clearly stated that coaches would be held to the same standards as parents, with a **zero-tolerance policy** for inappropriate behavior. Unfortunately, his actions during this incident did not reflect those standards. As you know, both **WYFC** and **CMYF** maintain **zero-tolerance policies regarding bullying**, and I believe this situation falls within that category.

I hope this concern will be taken seriously and addressed appropriately. I am more than willing to speak further if needed.

Thank you for your time and attention.

Best regards,
Jeffery Berkowitz
(508)245-0163

Sent from Yahoo Mail for iPhone

---

**Michelle Gauvin** <gauvinm86@gmail.com>                 Wed, Jul 30, 2025 at 10:31 PM
To: jeff berkowitz <jeff_berkowitz@yahoo.com>

**Subject:** Re: Incident on July 24 – Follow-Up

Hi John,

Thank you for taking the time to investigate the matter and for following up with me.

While I appreciate that you addressed the situation with Ben, I want to reiterate that my concern was not solely about whether his actions met the formal definition of bullying—but rather the **disconnect between his behavior and the standard he set for others** at the start of the season. On the first day of practice, Ben clearly stated that both coaches and parents would be held to the same level of respect and professionalism. Unfortunately, his decision to raise his voice at me across the field did not reflect those values.

I want to emphasize that we absolutely respect and appreciate the time and commitment that volunteers put into

That experience has already left me with some questions, and this recent incident only added to my concerns.

I truly hope this serves as a reminder for everyone involved to uphold the same respect and accountability that is asked of families and players. If anything further arises, I will not hesitate to reach out to you or to Tom Galvin, as suggested.

Thank you again for your time and consideration.

Best regards,
[Your Full Name]
[Your Contact Info, if desired]

---

## (no subject)

---

**Michelle Gauvin** <gauvinm86@gmail.com>                                      Sun, Jul 27, 2025 at 2:38 PM
To: jeff_berkowitz@yahoo.com

president@wachusettyfc.org

Dear JohnMandracchia,

I'm writing to express my concern about an incident that occurred with Ben, the football director, on **July 24, 2025**. At approximately **5:40 PM**, I was on the field throwing a football with my son and my step-sons. During that time, I had to discipline my son in a manner that was appropriate to the situation.

To my surprise, Ben yelled across the field, stating that I could not "yell" at my son. I want to be clear that I was not acting inappropriately and was well within my rights as a parent. Ben then proceeded to say that I "wasn't supposed to be on the field," even though this occurred **before practice began**.

His public remarks were unwarranted and, frankly, felt more like intimidation or bullying than constructive communication.

At the first practice, Ben clearly stated that coaches would be held to the same standards as parents, with a **zero-tolerance policy** for inappropriate behavior. Unfortunately, his actions during this incident did not reflect those standards. As you know, both **WYFC** and **CMYF** maintain **zero-tolerance policies regarding bullying**, and I believe this situation falls within that category.

I hope this concern will be taken seriously and addressed appropriately. I am more than willing to speak further if needed.

Thank you for your time and attention.

Best regards,
Jeffery Berkowitz
(508)245-0163

Cc    Peter Farrell <pfarrell@farrelllavin.com>

Good morning,

Michelle just reminded me that I never sent you my email to the board regarding my situation with the coach and Michelle's son. I am also going to forward you the complaint email I sent to John at the beginning of the season regarding a situation between myself and Ben the league director.

Sent from Yahoo Mail for iPhone



Begin forwarded message:

On Wednesday, September 3, 2025, 2:12 PM, jeff berkowitz <jeff_berkowitz@yahoo.com> wrote:

John,

In regards to our conversation this afternoon involving myself and Coach Patterson.

Towards the end of practice last night I was having a discussion with my step son. He had kicked over a a couple water bottles and his mother had asked him to pick it up and he snapped back at her and said "NO! i'm not picking it up". I turned back to ███████ and told him "enough with the back talk" (as this has been an on going behavioral issue). I then explained that "the back talk is not acceptable from the older 3 (his brothers and my son) and it's not acceptable from him either. I asked if he understood and while looking at the ground and jumping around, I grabbed his arm to hold him still and asked him to make eye contact with me because it's a sign of respect to look a person in the eye when they're talking to you and asked him again if he understood and he said yes.

It was at this time that coach Patterson and began to, what I perceived as telling me how to parent my child. I was then defensive and told him, I didn't ask him for his parenting advice.

In the moment I felt I was being judged on my parenting and being told how to parent my child. Certainly this situation could have been handled better by myself, and I intend to apologize to coach Patterson upon our next meeting.

Thank you,

email as spam.

## Concern Regarding Exclusion of My Son, ███ from Youth Football Practice

**Michelle Gavin** <gauvinm86@gmail.com>                                                    Wed, Sep 3, 2025 at 2:48 PM
To: John Mandracchia <president@wachusettyfc.org>

Dear Wachusett Youth Football & Cheer Board,

I am writing to formally address a concerning situation that was brought to my attention. On September 3, 2025, I received a phone call from President John Mandracchia, informing me that my son, ███ who has autism, is not allowed to attend football practice tonight, and possibly not tomorrow, due to "multiple complaints" that were reported last week, and that were not specified to me.

As ███ s parent, I have not been provided with any details regarding what these complaints are, what specific behaviors are in question, or how these concerns were documented. Without transparency, it is impossible for me to respond on his behalf or help him adjust if needed.

I would like to remind the Board that ███ is a child with a diagnosed disability, and has been reported to ALL his couches over the past 3+ years. Under the **Americans with Disabilities Act (ADA)** and **Section 504 of the Rehabilitation Act**, children with disabilities are entitled to **equal participation in community programs, including recreational and athletic activities**. Excluding him from practice without clear documentation, communication, or reasonable accommodation may constitute discrimination based on disability.

Additionally, Massachusetts state law (M.G.L. c. 151B and related education/athletics statutes) prohibits discrimination against individuals with disabilities in public accommodations and programs open to the community, such as youth sports leagues.

I respectfully request the following:

1. A written explanation of the specific complaints and incidents that led to this decision.

2. A clear outline of the league's policies and procedures for handling behavioral concerns.

3. An opportunity to meet and discuss constructive solutions, including reasonable accommodations, so that ███ can continue to participate fully and safely in this program.

███ has been part of youth sports for several years without issue, and it is heartbreaking to see him excluded without clarity or support. My hope is that we can work collaboratively to ensure compliance with the law, and—more importantly—that every child, regardless of ability, is given the chance to grow, learn, and belong through this program.

Please respond in writing at your earliest convenience so we can resolve this matter promptly and appropriately.

Sincerely,

Michelle Gavin

(508)626-7899

5A

Hi Michelle

Thanks for the feedback. Apologies is I wasn't clear yesterday when we spoke, hopefully the discussion in the afternoon cleared things up for you . To be rehash,  your child has been asked to stay home until we sort out the reports.

The move to ask players to not attend practice is the right of the board if we feel there is a safety concern. Since it was reported that your child stated that he" wanted gouge out eyeballsl have exercise the right of the precautionary.
I will be following up before the game this weekend. Please plan on having ▮▮▮ stay home again today until we complete the investigation

Thank you for your understanding

-John

---

**Michelle Gauvin** <gauvinm86@gmail.com>                              Thu, Sep 4, 2025 at 8:04 AM
To: John Mandracchia <president@wachusettyfc.org>

Where are my copies of the reports? I also want the copy of the alleged comments you are claiming ▮▮▮ said.. I also want a meeting with Jared and his wife since you claimed they both reported ▮▮▮ I also want documentation from the coaches that alleges ▮▮▮ doesn't try, "doesn't seem to want to be here" and how "he's a safety risk on the field" that Ben reported. I would expect you now have all reports as you are denying him to practice again.
Thank you
Sent from my iPhone

On Sep 4, 2025, at 7:57 AM, John Mandracchia <president@wachusettyfc.org> wrote:



EXHIBIT
5B

---

**John Mandracchia** <president@wachusettyfc.org>                        Thu, Sep 4, 2025 at 8:10 AM
To: Michelle Gauvin <gauvinm86@gmail.com>

As I mentioned to you yesterday, you will get a redacted copt of the final report.

I never stated who reported this beyond the head coach. Please stop sending messages stating I did.

When the final decision is made, and if there's punishment, you have the right to appeal in front of the board.

EXHIBIT
5D

## Re: Concern Regarding Exclusion of My Son, ▮▮▮ from Youth Football Practic

**Michelle Gauvin** <gauvinm86@gmail.com>                    Thu, Sep 4, 2025 at 8:09 AM
To: John Mandracchia <president@wachusettyfc.org>

I would also like to formally complain or report bullying from ▮▮▮ and ▮▮▮. They both on multiple occasions
have targeted ▮▮▮ physically and verbally, by throwing him on the ground, telling him he's sucks ect. I would expect
not to see both of them at practice till you have investigated this as well as this is the standard you have set for my
kids. I will also be at practice with my boys tonight.. ▮▮▮ can sit out and there is no reason why I should not be
allowed to be there as I have kids practicing!
Sent from my iPhone

EXHIBIT

5C

On Sep 4, 2025, at 8:05 AM, Michelle Gauvin <Gauvinm86@gmail.com> wrote:

Where are my copies of the reports? I also want the copy of the alleged comments you are claiming
▮▮▮ said.. I also want a meeting with Jared and his wife since you claimed they both reported ▮▮▮. I
also want documentation from the coaches that alleges ▮▮▮ doesn't try, "doesn't seem to want to be
here" and how "he's a safety risk on the field" that Ben reported. I would expect you now have all reports
as you are denying him to practice again.
Thank you
Sent from my iPhone

On Sep 4, 2025, at 7:57 AM, John Mandracchia <president@wachusettyfc.org> wrote:

Hi Michelle

Thanks for the feedback. Apologies is I wasn't clear yesterday when we
spoke, hopefully the discussion in the afternoon cleared things up for
you . To be rehash, your child has been asked to stay home until we
sort out the reports.

The move to ask players to not attend practice is the right of the board
if we feel there is a safety concern. Since it was reported that your child
stated that he" wanted gouge out eyeballs! have exercise the right of
the precautionary.
I will be following up before the game this weekend. Please plan on
having ▮▮▮ stay home again today until we complete the
investigation

Thank you for your understanding

On Wed, Sep 3, 2025 at 2:48 PM Michelle Gauvin <gauvinm86@gmail.com> wrote:

Dear Wachusett Youth Football & Cheer Board,

I am writing to formally address a concerning situation that was brought to my attention. On September 3,2025, I received a phone call from President John Mandracchia, informing me that my son, ████ who has autism, is not allowed to attend football practice tonight, and possibly not tomorrow, due to "multiple complaints" that were reported last week, and that were not specified to me.

As ████'s parent, I have not been provided with any details regarding what these complaints are, what specific behaviors are in question, or how these concerns were documented. Without transparency, it is impossible for me to respond on his behalf or help him adjust if needed.

I would like to remind the Board that ████ is a child with a diagnosed disability, and has been reported to ALL his couches over the past 3+ years. Under the **Americans with Disabilities Act (ADA)** and **Section 504 of the Rehabilitation Act**, children with disabilities are entitled to **equal participation in community programs, including recreational and athletic activities**. Excluding him from practice without clear documentation, communication, or reasonable accommodation may constitute discrimination based on disability.

Additionally, Massachusetts state law (M.G.L. c. 151B and related education/athletics statutes) prohibits discrimination against individuals with disabilities in public accommodations and programs open to the community, such as youth sports leagues.

I respectfully request the following:

1. A written explanation of the specific complaints and incidents that led to this decision.

2. A clear outline of the league's policies and procedures for handling behavioral concerns.

3. An opportunity to meet and discuss constructive solutions, including reasonable accommodations, so that Micah can continue to participate fully and safely in this program.

████ has been part of youth sports for several years without issue, and it is heartbreaking to see him excluded without clarity or support. My hope is that we can work collaboratively to ensure compliance with the law, and—more importantly—that every child, regardless of ability, is given the chance to grow, learn, and belong through this program.

Please respond in writing at your earliest convenience so we can resolve this matter promptly and appropriately.

Sincerely,

Michelle Gauvin

(508)826-7899

To: gauvinm86@gmail.com
Cc: Ben Bachant <footballdir@wachusettyfc.org>, Leah Leahy <marketing@wachusettyfc.org>

Hi,

This isn't my first time doing this and that's not the first time I heard this type of response. I ask that you take this seriously. I would like to remind  you that this is a private club. The board has the right to remove children and parents if we feel it is in the best interest of the organization.

If you have an issue with the players mistreating your child, please put it in your official rebuttal to the investigation involving your child ▇

The board will follow up shortly

---

**Michelle Gauvin** <gauvinm86@gmail.com>                                        Thu, Sep 4, 2025 at 9:55 AM
To: John Mandracchia <president@wachusettyfc.org>



**Subject:** Formal Rebuttal and Complaint Regarding ▇s Exclusion

Dear John and Wachusett Youth Football & Cheer Board,

I am writing in response to your message dated **September 4, 2025** regarding the exclusion of my son, ▇, from football practice, as well as your phone call on **September 3 at 1:41 p.m.**

First, I must **formally object to** ▇ being barred from participation without specific evidence or documentation of the alleged incident.

Your explanations have been **inconsistent**:

- In your **September 3** phone call, you stated ▇ could not attend practice due to "multiple complaints from last week," but you were unable to provide specifics. This left a ten-year-old child told he could not practice—with no explanation—and gave his parent no opportunity to respond or help him adjust.

- Later, on **September 3 at approximately 5:50 p.m.** at practice, you gave a **different reason**, stating it was because ▇ allegedly said he "wanted to gouge out eyeballs," and then added further bases for why ▇ should not only miss practice but potentially not play at all.

This shifting rationale raises serious concerns about the **fairness, accuracy, and legitimacy** of the decision. Without clear, consistent documentation, there is no valid basis for excluding ▇ nor any opportunity for me to address or support him.

Additionally, comments made by **Football Director Ben Bachant** on **September 3** are deeply troubling and descrimatory. He stated that ▇

- "Doesn't seem like he wants to be here,"

- "Doesn't put in much effort,"

- "Is unsafe on the line,"

- "He freezes on the line and is a danger to himself,"

- "Is he mentally mature enough to be on a team?" and

coach, **Jarred Louchart**, telling both ▮▮▮ and me on **September 2** how proud he was of ▮▮▮ and how hard he has been working this year. The stark contrast between the head coach's positive feedback and the Board's sudden negative characterization highlights clear **inconsistency and unfairness**.

It is also unacceptable that **my family is being punished alongside** ▮▮▮. Not only has ▮▮▮ been excluded without a fair process, but I have also been told I am not allowed at the field with my **three other sons** who play. On the morning of **September 4 at 9:25 a.m.**, I spoke directly with **Tyler Riel from the Town of Sterling**, who confirmed that I have **every right** to attend practices and games to observe my other children. Denying me this right is **retaliatory, discriminatory, and without lawful basis**.

Further, the broader context strongly suggests **bias and targeting**:

- **Coach Patterson (**▮▮▮**'s father)** yelled at my boyfriend, **Jeff**, on the sidelines at the end of practice on **September 2**, accusing him of "abusing" my younger son, ▮▮▮, when Jeff was disciplining him. Neither of ▮▮▮'s parent's were informed of this accusation, yet Jeff was told he could no longer attend practices. If the league truly believed there was a safety concern, it would have been **incumbent** on you to promptly inform ▮▮▮'s parents.

- Later that night, on **September 2 at 11:23 p.m.**, I posted on **SportsEngine** asking parents to encourage positive team behavior. **Jerica (team mom)** publicly commented,then took down "even the parents on the sideline," clearly targeting Jeff; she has expressed her dislike for him since January. Jerica then removed my post the morning of **September 4**, and only hours later I received your call excluding ▮▮▮—again with no specific information.

I am also **formally filing a bullying complaint** against players ▮▮▮ and ▮▮▮, who have repeatedly targeted ▮▮▮ by physically throwing him to the ground and verbally harassing him ("you suck," "you don't belong"). If **unverified** complaints against ▮▮▮ warrant his **immediate exclusion**, then by your own standard these players must also be **suspended from practice pending investigation**.

Under the **Americans with Disabilities Act (ADA)**, **Section 504 of the Rehabilitation Act**, and **Massachusetts anti-discrimination law** (including **M.G.L. c. 151B** and applicable public-accommodations statutes), children with disabilities are entitled to **equal participation** in community programs. Excluding ▮▮▮ without a transparent process, reasonable accommodations, and consistent explanations risks **disability discrimination**. Extending exclusion to me —preventing my attendance while my other children practice—appears **retaliatory**.

**Accordingly, I request the following in writing:**

1. **Copies of all written reports/complaints** that led to ▮▮▮'s exclusion.

2. A **clear timeline** of when these reports were made, by whom, and how they were documented.

3. The league's **written policies and procedures** for handling complaints, investigations, and disciplinary decisions, including any appeal process.

4. **Confirmation** that my bullying complaint against ▮▮▮ and ▮▮▮ will be investigated with **equal seriousness**, including their **temporary suspension** pending the outcome.

5. **Clarification** on why Jeff was banned from attending practices without any direct communication to parents regarding the accusation against him.

6. **Confirmation** that I am permitted to attend practices with my other children while this matter is pending.

Please respond in writing no later than **five (5) business days** from today, and **preserve all related documents and communications**, including reports, emails, texts, internal messages, and coach notes concerning ▮▮▮, Jeff, and my family.

Sincerely,
**Michelle Gauvin**
(508) 826-7899

## Michelle Gauvin and Jeff Berkowitz Expulsion from Wachusett Youth Football

**John Mandracchia** <president@wachusettyfc.org>                    Fri, Sep 5, 2025 at 6:22 PM
To: Michelle Gauvin <gauvinm86@gmail.com>, jeff berkowitz <jeff_berkowitz@yahoo.com>, Tom Galvin
<vp@wachusettyfc.org>, Chris Phelps <flex@wachusettyfc.org>, Leah Leahy <marketing@wachusettyfc.org>



Michelle and Jeff,

I received a call today from the Sterling recreation department  alerting me of your report. They mentioned that we
(Wachusett) were handling the situation correctly and did not believe you had a basis to claim discrimination.

I spoke to the board about your action and we unanimously agree that your unprovoked attempt to hinder the
organization's ability to function in Sterling will not be tolerated.

We voted unanimously to remove you both. ███  ███ and ███ from the program.  As a sign of good faith we will
offer a refund for the kids in exchange for the return of all equipment.

Please coordinate the return with Ben, Chris or myself.


**John Mandracchia** <president@wachusettyfc.org>                    Fri, Sep 5, 2025 at 6:28 PM
To: Michelle Gauvin <gauvinm86@gmail.com>, jeff berkowitz <jeff_berkowitz@yahoo.com>, Tom Galvin
<vp@wachusettyfc.org>, Chris Phelps <flex@wachusettyfc.org>, Leah Leahy <marketing@wachusettyfc.org>

███ not ███


**Michelle Gauvin** <gauvinm86@gmail.com>                    Fri, Sep 5, 2025 at 6:46 PM
To: John Mandracchia <president@wachusettyfc.org>

What about ███? I have every right to call the town to get clarification...
Sent from my iPhone

On Sep 5, 2025, at 6:28 PM, John Mandracchia <president@wachusettyfc.org> wrote:


**John Mandracchia** <president@wachusettyfc.org>                    Fri, Sep 5, 2025 at 7:10 PM
To: Michelle Gauvin <gauvinm86@gmail.com>

**Michelle Gauvin** <gauvinm86@gmail.com>
To: John Mandracchia <president@wachusettyfc.org>

Fri, Sep 5, 2025 at 7:19 PM

So why not ▮▮▮ or ▮▮▮? They have done nothing wrong... I have done nothing wrong.... so this all seems retaliatory against me, just like not allowing me to bring my kids to practice! I am willing to look past this but I want my kids the opportunity to play football..



**John Mandracchia** <president@wachusettyfc.org>
To: Michelle Gauvin <gauvinm86@gmail.com>

Fri, Sep 5, 2025 at 9:4▮

I'm going to set up a call for 10am Google meet tomorrow to talk this over with you, Jeff and Keith.



**Michelle Gauvin** <gauvinm86@gmail.com>
To: John Mandracchia <president@wachusettyfc.org>

Fri, Sep 5, 2025 at 9:52 PM

I'll reach out to my lawyer to see if he can attend I'll let you know
Sent from my iPhone

On Sep 5, 2025, at 9:49 PM, John Mandracchia <president@wachusettyfc.org> wrote:



**Michelle Gauvin** <gauvinm86@gmail.com>
To: Michelle Gauvin <Gauvinm86@gmail.com>
Cc: John Mandracchia <president@wachusettyfc.org>

Fri, Sep 5, 2025 at 10:32 PM

My Layer has previous obligations and request that we have a meeting on Monday. I am attaching his contact information so you're aware of who my lawyer is and to send him the invitation for Monday. If gou are willing to postpone this " kick out "for our kids we would appreciate if they could participate in Sunday's game, as they have done nothing wrong.
Sent from my iPhone

On Sep 5, 2025, at 9:52 PM, Michelle Gauvin <Gauvinm86@gmail.com> wrote:

I'll reach out to my lawyer to see if he can attend I'll let you know

**John Mandracchia** <president@wachusettyfc.org>
To: Michelle Gauvin <gauvinm86@gmail.com>

Fri, Sep 5, 2025 at 10:49 PM

We are offering a meeting at a time that works for us .
Monday we have work and we have our standard board meeting.
If a lawyer wants to call me I'd be happy chat but we're not postponing anything



---

**Michelle Gauvin** <gauvinm86@gmail.com>                          Sat, Sep 6, 2025 at 8:31 AM
To: John Mandracchia <president@wachusettyfc.org>

We will not be at the meeting with out our legal representation.
Sent from my iPhone



On Sep 5, 2025, at 10:50 PM, John Mandracchia <president@wachusettyfc.org> wrote:

---

**John Mandracchia** <president@wachusettyfc.org>                  Sat, Sep 6, 2025 at 9:03 AM
To: Michelle Gauvin <gauvinm86@gmail.com>, Leah Leahy <marketing@wachusettyfc.org>, Ben Bachant
<footballdir@wachusettyfc.org>, Keith Lovejoy <keith.lovejoy@gmail.com>

Michelle,

We will be proceeding with the meeting. If any parties elect not to show up it will be noted and still processed as voted
on by the board.



---

**Michelle Gauvin** <gauvinm86@gmail.com>                          Sat, Sep 6, 2025 at 9:07 AM
To: John Mandracchia <president@wachusettyfc.org>, Peter Farrell <pfarrell@farrelllavin.com>
Cc: Leah Leahy <marketing@wachusettyfc.org>, Ben Bachant <footballdir@wachusettyfc.org>, Keith Lovejoy
<Keith.lovejoy@gmail.com>

I don't believe you will be changing your decision so please advise to the agenda of the meeting.
Sent from my iPhone



On Sep 6, 2025, at 9:04 AM, John Mandracchia <president@wachusettyfc.org> wrote:

---

**Leah Leahy** <marketing@wachusettyfc.org>                        Sat, Sep 6, 2025 at 10:05 AM
To: Michelle Gauvin <gauvinm86@gmail.com>
Cc: John Mandracchia <president@wachusettyfc.org>, Peter Farrell <pfarrell@farrelllavin.com>, Ben Bachant

**Michelle Gauvin** <gauvinm86@gmail.com>
To: Leah Leahy <marketing@wachusettyfc.org>

Sat, Sep 6, 2025 at 10:06 AM

As I've told John no we will not be coming with out my lawyer present.

EXHIBIT

6 M

**Leah Leahy** <marketing@wachusettyfc.org>
To: Michelle Gauvin <gauvinm86@gmail.com>

AM

Ok the last email made it seem like you were.

-------- Forwarded message --------
From: **Keith Lovejoy** <keith.lovejoy@gmail.com>
Date: Sat, Sep 6, 2025, 16:05
Subject: Re: ▓▓▓ and ▓▓▓ Gauvin football
To: John Mandracchia <president@wachusettyfc.org>



I wish we could have come to a amicable resolution as my children have put in a lot of work. And were devastated upon finding out they wouldn't be allowed to remain with the team.

> On Sat, Sep 6, 2025, 15:58 Keith Lovejoy <keith.lovejoy@gmail.com> wrote:
> I understand you are all volunteers. That being said, I'm disheartened that my children have to be punished for something their parent did.



> On Sat, Sep 6, 2025, 15:48 John Mandracchia <president@wachusettyfc.org> wrote:
> Hi Keith.
>
> It's okay, I know it was short notice for you and it probably feels a little out of the blue.
>
> There's a long story but after we found out that we were reported to the state and to the town of Sterling by Michelle and Jeff, we unanimously decided that we do not want to offer solution. If we allow their kids to play, it would the door open for them to make baseless claims and to be disrespectful to our board and coaching staff.
>
> I'm sorry that it came to this. The board would have hoped to resolve this. However, we are a group of volunteer parents that are simply trying to do what's best for everyone.
>
> Thanks
> -John Mandracchia
> WYFCC President



> On Sat, Sep 6, 2025 at 9:37 AM Keith Lovejoy <keith.lovejoy@gmail.com> wrote:
> I will not be able to make the meeting today, im sorry. I was given less than a days notice of this meeting. I can not change my plans to accommodate this meeting. Again I apologize.
>
> > On Fri, Sep 5, 2025, 21:50 John Mandracchia <president@wachusettyfc.org> wrote:
> > I can explain more tomorrow at 10am with a few other board members. I'll send the Google meet now
> >
> > > On Fri, Sep 5, 2025 at 8:47 PM Keith Lovejoy <keith.lovejoy@gmail.com> wrote:
> > > It has come to my attention that my sons are being terminated from the Wachusett 10U team. As it was explained to me their mother Michelle and the board had some issues. I would like for someone to explain to me why my sons are being punished for a supposed slight of their mother. Also their younger brother is being allowed to continue to participate with his team even though Michelle is his parent. I believe it is not

We just received this from the board.
Sent from my iPhone

Begin forwarded message:

**From:** John Mandracchia <president@wachusettyfc.org>
**Date:** September 15, 2025 at 5:36:37 PM EDT
**To:** Michelle Gauvin <Gauvinm86@gmail.com>, Ben Bachant
<footballdir@wachusettyfc.org>, Leah Leahy <marketing@wachusettyfc.org>, jeff
berkowitz <jeff_berkowitz@yahoo.com>
**Subject: Re: Equipment Return & Refund**

Michelle and Jeff,

The football equipment remains league property. If they are not returned by this Friday,
9/19/26, the league will pursue further steps including replacement cost recovery and, if
necessary, a report with local authorities for lost/stolen property or a civil claim to recover
costs.

On Thu, Sep 11, 2025 at 10:44 PM John Mandracchia <president@wachusettyfc.org>
wrote:
> Michelle,
> The email that I sent you earlier tonight states that the cost of the **jersey** is deducted
> from the offered refund. Essentially, you paid for the jerseys and we are not asking for
> them back. Please return the **equipment** (shoulder pads and helmets) to the Sterling
> Police department.
> -John

Michelle and Jeff,

As a follow up to my previous email, please see the instructions below for next steps on
how to return the equipment and receive your refund

Thanks
-John Mandracchia

On Thu, Sep 11, 2025 at 10:32 PM Michelle Gauvin <gauvinm86@gmail.com> wrote:
> After discussion with my lawyer... We will need the equipment for the boys to wear for
> when they are interviewed by the press in their WFYC jerseys...
> Sent from my iPhone

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

It has come to our attention that a social media post has been circulating, claiming that a child was removed from our league due to a diagnosis of autism. We want to make it unequivocally clear that WYFC would never ask any child to leave our program based on a diagnosis or any condition. Our mission is to provide a safe, inclusive, and supportive environment for all athletes, as long as they are able to participate safely in our program.

To set the record straight, the decision to ask this family to leave was not related to their child or children. It was due to the parents' actions, which violated our Code of Conduct. Each year, we require all parents and guardians to sign this Code of Conduct before conditioning camp begins. This policy is in place to ensure a smooth and positive season, with the focus remaining on the development and well-being of our athletes.

When someone violates the Code of Conduct, it is at our discretion to take appropriate action, including asking them to leave the program. This standard is clearly outlined in the Code of Conduct, and we are committed to upholding it.

We hope this statement clarifies the situation and allows us to move forward with a successful and drama-free season, focused on what truly matters: the growth, development, and safety of our athletes.

Thank you for your understanding and continued support.

Sincerely,

John Mandracchia and Leahy Leahy

President and VP, Wachusett Youth Football and Cheer

Sign In • Terms of Use • Privacy Policy

Visit your Communication Preferences to unsubscribe.

© 2025 SportsEngine. All Rights Reserved.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

E-FILED

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiffs*,

   v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants*.

C.A. No.: _____

(3)

---

### PLAINTIFF'S MOTION FOR SPECIAL PROCESS SERVER

In accordance with the provisions of Rule 4C of the Mass. R. Civ. P., the undersigned hereby moves this Honorable Court to issue an order appointing **David Ayles** and **QuickServ/Allstate** as process server in the above-entitled action.

The undersigned swears to the best of his knowledge and belief that the person to be appointed process server is a Constable and a qualified and knowledgeable person in the service of court process, is 18 years of age or over, and is not a party to this action.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

Respectfully submitted,

MICHELLE GAUVIN and JEFFREY
BERKOWITZ, Individually and as Parents and
Next Friend of Their Minor Children,

By their attorney,

*Peter S. Farrell*

Peter S. Farrell (BBO #656512)
Farrell Law Group PLLC
46 Railroad Avenue, Suite 204
Duxbury, MA 02332
Tel: (781) 236-3620
pfarrell@farrelllavin.com

October 2, 2025

2

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

E-FILED

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiff***s,**

   v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants.*

C.A. No.: _____

# (4)

---

## PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR SHORT ORDER OF NOTICE

    Plaintiff moves this Court pursuant to Mass. R. Civ. P. 65(b) and Superior Court Rule 9A(d) for entry of a Short Order of Notice to ensure that Plaintiff's Motion for Preliminary Injunction is heard on an expedited basis. The substantive motion, as is set forth in the Verified Complaint is predicated upon the exclusion of three minor children, one of whom is disabled, from playing youth football. The football season is well underway and it is critical that the preliminary injunction be heard and decided forthwith.

    WHEREFORE, Plaintiff requests that the Court issue an Order directing Defendants to appear and show cause on an expedited basis why the relief sought should not be granted.

Respectfully submitted,

MICHELLE GAUVIN and JEFFREY
BERKOWITZ, Individually and as Parents and
Next Friend of Their Minor Children,

By their attorney,

*Peter S. Farrell*
Peter S. Farrell (BBO #656512)
Farrell Law Group PLLC
46 Railroad Avenue, Suite 204
Duxbury, MA 02332
Tel: (781) 236-3620
pfarrell@farrelllavin.com

October 2, 2025

2

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

# E-FILED

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiffs*,

    v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants*.

---

C.A. No.: _____

(5)

## <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

NOW COME the Plaintiffs Michelle Gauvin and Jeffrey Berkowitz, individually and as parents and next friends of their minor children, who respectfully move this Court, pursuant to Mass. R. Civ. P. 65, for the entry of a Preliminary Injunction against Defendant Wachusett Youth Football and Cheer, Inc. ("WYFC").

As set forth in the Verified Complaint, the exhibits thereto, and the accompanying Memorandum of Law, WYFC has engaged in unlawful discrimination, retaliation, intimidation, and coercion by excluding Plaintiffs' children from participation in youth football and by issuing coercive threats against their parents. Plaintiffs have demonstrated a strong likelihood of success on the merits of their claims, actual and imminent irreparable harm absent immediate judicial intervention, and that both the balance of harms and the public interest weigh decisively in their favor.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Preliminary

Injunction as follows:

1. Ordering the immediate reinstatement of Plaintiffs' children to full participation in the WYFC football program;

2. Enjoining WYFC, its officers, directors, agents, and affiliates from engaging in any further acts of discrimination, retaliation, intimidation, or coercion against Plaintiffs and their children;

3. Requiring WYFC to provide reasonable accommodations and modifications to its policies, practices, and procedures to ensure equal access for children with disabilities consistent with federal and state law;

4. Prohibiting WYFC from disseminating false, disparaging, or retaliatory statements against Plaintiffs and their family;

5. Awarding Plaintiffs their costs and attorneys' fees as permitted by law; and

6. Granting such other and further relief as this Court deems just and proper.


Respectfully submitted,

MICHELLE GAUVIN and JEFFREY BERKOWITZ

Individually and as Parents and Next Friends of Their Minor Children

By their attorney,


*Peter S. Farrell*
Peter S. Farrell (BBO #656512)
Farrell Law Group PLLC
46 Railroad Avenue, Suite 204
Duxbury, MA 02332
Tel: (781) 236-3620
pfarrell@farrelllavin.com


Dated: October 2, 2025


2

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

E-FILED

**COMMONWEALTH OF MASSACHUSETTS**

WORCESTER, ss                                          SUPERIOR COURT DEPT.

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiff,*

  v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants.*

C.A. No.: _____

(5.1)

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**</u>

I. <u>**INTRODUCTION**</u>

Plaintiffs Michelle Gauvin and Jeffrey Berkowitz, on behalf of their minor children,
ages 10, 10, and 6, seek a preliminary injunction to enjoin Defendant, Wachusett Youth
Football and Cheer, Inc. ("WYFC") from continuing to exclude their children from
participation in its youth football program. The exclusion is rooted in disability
discrimination, retaliation for protected conduct following complaints of unlawful
discrimination on the basis of disability, and unlawful denial of access to a place of public
accommodation. These unlawful acts have also cascaded and escalated into breach of
contract, defamation, and violations of the Plaintiffs' civil rights under both state and
federal law.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

Without immediate injunctive relief, Plaintiffs' children will permanently lose the ability to participate in the Fall 2025 football season—a season that is already underway. Football is far more than just a sport—it is a proving ground where young people learn discipline, perseverance, and how to push through challenges together. Beyond the field, its true value lies in shaping character: instilling teamwork, accountability, and resilience that carry forward into school, friendships, and every aspect of life.   The Verified Complaint and record establish a substantial likelihood of success on the merits, demonstrate irreparable harm to the children absent injunctive relief, and show that the balance of equities and public interest weigh overwhelmingly in the Plaintiffs' favor.

## II.  <u>STATEMENT OF FACTS</u>

The Plaintiffs, Michelle Gauvin and Jeffrey Berkowitz, are domestic partners residing in Worcester County, Massachusetts (Verf. Complaint at ¶ 1). Ms. Gauvin is the parent and legal guardian of three minor children, two of whom—Child 1 and Child 2—have been diagnosed with Autism, while Child 3 is not diagnosed with Autism (Verf. Complaint at ¶ 1). Mr. Berkowitz is the parent of Child 4, who is not diagnosed with Autism, and also serves as the stepparent to Children 1–3 (Verf. Complaint at ¶ 1). Together, these four children were enrolled or eligible to participate in the Wachusett Youth Football and Cheer, Inc. ("WYFC") program (Verf. Complaint at ¶ 6).

WYFC is a Massachusetts nonprofit corporation that operates youth football and cheerleading programs in Worcester County, with its principal address in Rutland, Massachusetts (Verf. Complaint at ¶ 3). The organization runs its programs at the Griffin Road Athletic Complex ("GRAC") in Sterling, Massachusetts, a municipally owned

facility that, together with WYFC, qualifies as a place of public accommodation under G.L.

c. 272, §§ 92A, 98, and 98A (Verf. Complaint at ¶¶ 9–13).

In July 2025, Ms. Gauvin entered into a contract with WYFC for her son, Child 1,

to participate in football, paying the $300 registration fee and submitting all required forms

(Verf. Complaint at ¶ 4). Child 1 had already played football for WYFC for three

consecutive seasons without incident, and the 2025 season would have been his fourth

(Verf. Complaint at ¶ 14). Despite his Autism diagnosis, Child 1 was medically cleared to

play, and the family had consistently supported WYFC, with both Mr. Berkowitz and Child

1's grandfather volunteering as coaches (Verf. Complaint at ¶¶ 14–21).

At the start of the 2025 season, Child 1 regularly attended practices without issue

(Verf. Complaint at ¶ 21). On September 3, 2025, however, WYFC President John

Mandracchia abruptly informed the Plaintiffs that Child 1 could not attend practice due to

unspecified "complaints" (Verf. Complaint at ¶ 27). Later that evening, Mandracchia

changed his explanation, claiming that Child 1 had threatened to "gouge out eyeballs"

(Verf. Complaint at ¶ 44). Despite repeated requests, no documentation was ever provided,

and Mandracchia failed to consider that, even if the comment had been made, it was more

likely than not a manifestation of Child 1's disability (Verf. Complaint at ¶¶ 45–47).

September 3, WYFC Football Director Ben Bachant made discriminatory remarks

about Child 1, stating that he "did not seem to want to be there," was "unsafe on the line,"

and might "have a breakdown on the field," comments that directly questioned Child 1's

fitness to play based on his disability (Verf. Complaint at ¶ 25). These remarks contradicted

the positive feedback Child 1 had received from his head coach just one day earlier (Verf.

Complaint at ¶ 26). Later in the afternoon, WYFC Fundraising and Marketing Director

Leah Leahy, joined by Mandracchia and Bachant, confronted Ms. Gauvin at practice and informed her that because Child 1 was excluded, she could not remain to watch her other children (Verf. Complaint at ¶¶ 41–43). Leahy further asserted that Child 1 posed a "safety issue" because teammates might "choose not to block for him" (Verf. Complaint at ¶ 43).

Almost immediately, WYFC and its affiliates escalated their retaliatory actions. Coach Patterson accused Mr. Berkowitz of "abusing" Child 3, triggering a bad-faith and ultimately unsupported 51A child abuse report (Verf. Complaint at ¶¶ 39–40). At the same time, Child 1 endured bullying by Player 1 and Player 2, who told him "you suck" and "you don't belong," yet WYFC took no action against them, instead focusing its efforts on excluding Child 1 from the program (Verf. Complaint at ¶¶ 28–33).

On September 4, 2025, Ms. Gauvin contacted the Recreation Director of the Town of Sterling, who confirmed that she had every right to attend practices and games at GRAC (Verf. Complaint at ¶¶ 54-56). That same day, she wrote to the WYFC Board of Directors, reminding them of Child 1's disability and WYFC's obligations under the ADA, Section 504, and Massachusetts law, while also requesting documentation and reasonable accommodations (Verf. Complaint at ¶¶ 35–36). WYFC never responded (Verf. Complaint at ¶ 37).

On September 6, 2025, Mandracchia admitted in an email to Child 1 and Child 2's biological father, Keith Lovejoy, that WYFC's decision to exclude the children came after the Plaintiffs had reported the matter to the Town of Sterling and the state (Verf. Complaint at ¶ 68). That same day, Plaintiffs were notified that not only was Child 1 banned, but Child 2 and Child 4 were also excluded, leaving only Child 3 permitted to continue—on the

condition that he was accompanied by his biological father, a WYFC coach, and not by Ms. Gauvin (Verf. Complaint at ¶ 63 and Exhibits 6A-6M).

In addition to these exclusions, Mandracchia sent coercive and threatening emails to the Plaintiffs demanding the immediate return of WYFC-issued football equipment (Verf. Complaint at ¶ 75). In one such email, he stated that if the equipment was not returned by a specified date, WYFC would report the equipment as "stolen" to the police and file a civil action to recover replacement costs (Verf. Complaint at ¶ 75). The tone of these emails was overtly hostile, designed to intimidate, coerce, and punish the Plaintiffs for asserting their rights and for reporting WYFC's conduct to municipal and state authorities (Verf. Complaint at ¶¶ 54-56, 60).

At no time did WYFC identify any violation of its Code of Conduct or other policies (Verf. Complaint at ¶¶ 58-59). Instead, its actions reflected retaliation against the Plaintiffs for their advocacy and unlawful discrimination against both the children and Ms. Gauvin (Verf. Complaint at ¶¶ 60-63). WYFC also engaged in sex discrimination against Ms. Gauvin by conditioning Child 3's continued participation on his being accompanied only by his biological father, and not by her (Verf. Complaint at ¶ 63).

On September 12, 2025, the Plaintiffs filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and promptly sought expedited removal to Superior Court (Verf. Complaint at ¶ 73). Recognizing the urgency of the matter, the Investigating Commissioner granted the request, leading to the present action (Verf. Complaint at ¶ 74).

### III. LEGAL STANDARD

A preliminary injunction under Mass. R. Civ. P. 65 should issue where the moving party demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; and (3) that the balance of harms favors the moving party. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616–17 (1980). Courts also consider the public interest. Injunctive relief is particularly warranted where denial will result in the loss of rights that cannot be restored through monetary damages alone.

### IV. LEGAL ARGUMENT

#### A. The Plaintiffs Are Likely To Succeed On The Merits Of Their Claims

##### 1. The Plaintiffs Are Likely to Succeed on the Merits of Count III Because They Can Show a Prima Facie Case of Disability Discrimination Under The Americans With Disability Act, Section 504 of the Rehabilitation Act of 1973 and G.L. c. 151B

To state a prima facie case of disability discrimination in the non-employment context, a plaintiff must demonstrate that: (1) they are an individual with a disability as defined by the ADA; (2) they are qualified or otherwise eligible to participate in or benefit from the defendant's services, programs, or activities; (3) they were excluded from participation in, denied the benefits of, or otherwise subjected to discrimination by the defendant; and (4) the exclusion, denial, or discrimination occurred by reason of their disability. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000) (Title II); PGA Tour, Inc. v. Martin, 532 U.S. 661, 674–75 (2001) (Title III).

a. **The Defendant's Claim The Parents Violated The Code Of Conduct is a Pretext Because Such Claims Were Made After The Plaintiffs Asserted Their Complaints**

On September 3, 2025, Football Director Ben Bachant made remarks that specifically implied Child 1 was not suitable to play football based on his disability (autism) including: "Doesn't seem like he wants to be here"; "Doesn't put in much effort"; "Is unsafe on the line"; "He freezes on the line and is a danger to himself"; "Is he mentally mature enough to be on a team?" [recall, Child 1 is ten years old]; and "What if he has a breakdown on the field?" See Verf. Comp. ¶25. Shortly thereafter, the Defendant barred Child 1 from football activities and provided no specifics of the basis for Child 1's exclusion. See Verf. Comp. ¶27.

The Plaintiffs immediately communicated and voiced their objection to the action taken by the Defendant to exclude Child 1. See Verf. Comp. ¶¶34-44. To date, despite repeated demands for specifics and details regarding what the Defendants describe as a breach of the "Code of Conduct," no specific details or response was forthcoming either before or after suit was filed. Verf. Comp. ¶¶ 47-49. For the Defendant to state the Plaintiffs' conduct violated to the Code of Conduct is a pretext and arose after the Plaintiffs asserted that WYFC acted unlawfully by discriminating against Child 1who had played football with WYFC for the prior three seasons without incident.

2. **The Plaintiffs Are Likely To Succeed on the Merits of Count IV Because They Can Show A Prima Facie Case of Retaliation For Asserting Rights Against Discriminatory Animus Based on Disability**

To prove a claim of retaliation, a plaintiff must satisfy the elements of the McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 804-805 (1973) burden-shifting test. See Verdrager v. Mintz, Levin, Cohn. Ferris. Glovsky & Popeo, P.C, 474 Mass. 382, 406,

50 N.E.3d 778 (2016) (applying burden-shifting analysis to plaintiff's retaliation claim). Pursuant to this analysis, the initial burden is on the plaintiff to establish his/her prima facie case. Id. "To make out [a] prima facie case [for retaliation under G. L. c. 15 IB, § 4(4), the plaintiff] [must] show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 260, 172 N.E.3d 737 (2021).

In the case here, in their role as parents, the Plaintiffs complained and advocated regarding the unlawful and discriminatory treatment of Child 1. See Verf. Comp. ¶¶34-44. Complaining about acts of unlawful discrimination on the basis of disability is protected conduct and activity.   As a result, the Plaintiffs and their children suffered an adverse reaction (being banned from football altogether) and very clearly, this ban was the result of the protected conduct because the Defendant, by and through its agent, Mandracchia, admitted in writing, that the Defendant was not interested in a "solution" because Ms. Gauvin not only wrote to the Board of WYFC, she raised the same complaints of unlawful discrimination and exclusion to the Town of Sterling Director of Recreation, Tyler Riel, and the state. See Verf. Comp. ¶¶54-68.   Accordingly, based on this evidence and irrefutable written record, the Plaintiffs are likely to succeed on their claim for retaliation.

As stated and set forth above, the Defendant's specious and self-serving claim that the Plaintiffs violated the "Code of Conduct" is a pretextual shield.  The real reason for the "ban" of the Plaintiffs and their family is the Defendant and its cadre of three "leaders" did not like being challenged by the Plaintiffs or questioned by town officials for their unlawful

discrimination which was caused by their own behavior and choices.    See Verf. Comp.

¶68:

> Mandracchia responded again, this time at 3:48 PM on Saturday, September
> 6:  "It's okay, I know it was short notice for you and it probably feels a little
> out of the blue.   There is a long story but after we found out that we were
> reported to the state and to the Town of Sterling by Michelle and Jeff, we
> unanimously decided that we do not want to offer a solution.   If we allow
> their kids to play, it would the the [sic] door open for them to make baseless
> claims and to be disrespectful to our board and coaching staff.

> See Verf. Comp. at Exhibit 7C.

### 3.    The Plaintiffs Are Likely To Succeed On the Merits of Count V Because They Can Show A Prima Facie Case of Discrimination In A Place of Public Accommodation Under the ADA and G.L. c. 272

A plaintiff has three elements to establish for a prima facie case of discrimination

in a place of public accommodation: (1) plaintiff is a member of a protected category under

Mass. Gen. Laws ch. 272, § 98, and (2) plaintiff was denied access to or restricted in the

use of (3) a place of public accommodation.    See Soltys v. Wellesley Country Club, 15

Mass. L. Rep. 650 at *20 (Norfolk Superior Court, 2002).

In the case *sub judice*, Child 1 is a qualified individual with a disability, medically

cleared to participate in youth football. Verf. Comp. at ¶ 2.  Defendant WYFC, is a private

entity operating a community sports program at a municipally owned facility and thus is a

place of public accommodation under Title III and a program subject to Title II when

utilizing municipal facilities.    Verf. Comp. at ¶¶ 3, 7-13.  As a result of the Plaintiff's

complaints regarding unlawful discrimination against Child 1, the Plaintiffs other children

(Child 2 and Child 4) were denied the opportunity to participate in football—an opportunity

they had successfully exercised in prior years—solely after Defendant's leadership cited

conduct by Child 1 directly tied to his disability.   Verf. Comp. at ¶¶ 14-18.

It is this one episode that cascaded and escalated into a bizarre and pitched battle where the Defendant retaliated – and banned not only Child 1 – but his siblings (Child 2 and 4 )– and their parents from any football activities. Verf. Comp. at ¶¶ 48-53. The initial exclusion of Child 1 constitutes discrimination within the meaning of the ADA. The exclusion of Children 2 and 4 and the Plaintiffs is an act of unlawful retaliation directly related and tied to their vocal objection to the Defendant's unlawful actions, objections of which are protected activity and conduct under both state and federal law. Verf. Comp. at ¶ 56.

Title III explicitly prohibits a public accommodation from denying individuals with disabilities "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" it provides. 42 U.S.C. § 12182(a). Accordingly, in accordance with those verified allegations, signed under the pains and penalties of perjury, coupled with the Defendants own words documented in ill-advised emails, the Plaintiffs have shown a prima facie case of discrimination in a place of public accommodation.

### a. The Defendant Failed To Provide Reasonable Accommodations or Modifications To Policies, Practices and Procedures To Avoid Discriminatory Exclusion of Child 1 Based on His Disability

Title II and Title III require reasonable modifications to policies, practices, or procedures when necessary to avoid discrimination, unless the entity demonstrates that the modification would "fundamentally alter" the nature of the service or program. 42 U.S.C. § 12182(b)(2)(A)(ii); PGA Tour, Inc. v. Martin, 532 U.S. at 682.

The Defendant has made no such showing here and cannot make any such showing. First, this is ten-year old youth football. It is a far cry from high-velocity impact varsity sports at the high school or college level. The Defendant's program necessarily involves

10

catering to young men, in this case ages 10, 10 and 6, and all the challenges, joys, teaching moments, support, education, teamwork, commitment and drive: all attributes that are not measurable in any form that can be compensated with money.

Second, the Defendants cannot explain how Child 1 participated for the last three years, started this year (in July), and somehow now is being excluded due to allegations Child 1 made a statement first reported as "I'll gouge your eyeballs out" or words to that effect. "'True threats' encompass statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." See M.H. v. E.R.M., 92 Mass. App. Ct. 1120 (2017) at 3 citing O'Brien v. Boroski, 461 Mass. 415, 423 (2012) quoting from Virginia v. Black, 538 U.S. 343 (2003). "Intimidation" qualifies as a true threat "where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." O'Brien, supra at 425, quoting from Black, supra at 360. Unlike fighting words, true threats can be communicated through intermediaries if the defendant intends for the threat to reach the victim. See Commonwealth v. Walters, 472 Mass. 680, 693-694 (2015).

The Defendant is a purveyor of ten-year-olds on a football field training for a rough and physical game that by its nature involves physical contact, aggressiveness, and mental toughness. A 10-year-old who, assuming *arguendo* said, "I'll gouge your eyes out," in no way, shape or form constitutes a "true threat." Now add the fact the purported offender is autistic. Setting aside the Defendants were required to engage in an interactive process and to consider reasonable accommodations to Child 1, to claim this alleged exchange is disqualifying conduct or a "true threat" is absurd. None of the alleged messages

11

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

communicates a threat to commit an act of unlawful violence or an intent to place anyone in fear of bodily harm or death.

### b. Massachusetts State Law Mandates Full Enjoyment of the Accommodations, Advantages, Facilities And Privileges Of Any Place of Public Accommodation

Massachusetts law provides overlapping and independent protections. Chapter 151B prohibits discrimination "because of the handicap of any person" in "the full enjoyment of the accommodations, advantages, facilities and privileges of any place of public accommodation." G.L. c. 151B, § 4(10). Likewise, the Massachusetts Public Accommodation Law, G.L. c. 272, §§ 92A, 98, guarantees that all persons "shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation" regardless of disability. Courts have recognized that these statutes are to be construed liberally to effectuate their broad remedial purpose of eliminating discrimination. See Lowell v. Mass. Comm'n Against Discrimination, 65 Mass. App. Ct. 356, 364 (2006).

Here, the Defendant's actions—excluding Plaintiffs' children from a youth sports league for what was originally a disability-related reason pertaining to Child 1 only, while allowing other children to continue to participate—fall squarely within the prohibitions of these statutes. The denial of equal participation in youth football on the basis of disability coupled with discrimination and retaliation in a place of public accommodation are precisely the harms that both the ADA and Massachusetts law were enacted to prevent. Additionally, the record before the Court, in the Defendant's own words demonstrate retaliatory conduct that is expressly stated when the Defendant intended to offer no solution because the Plaintiffs reported the Defendant "to the town and state."

Accordingly, Plaintiffs have more than satisfied the elements of a prima facie case under both federal and state law, and the record establishes a strong likelihood of success on the merits.

### 4. The Plaintiffs Are Likely To Succeed on The Merits of Count VI Because They Can Show the Defendant Engaged In Threats, Intimidation and Coercion in Violation of the Massachusetts Civil Rights Act

The Defendant's conduct goes well beyond discriminatory animus and retaliation. Not long after the Plaintiffs exercised their protected right to complain about unlawful discrimination, the Defendants launched a bogus and bad faith complaint for "abuse and neglect" against Mr. Berkowitz. Verf. Comp. at ¶¶ 31-40. On September 26, 2025, the Department of Children and Families ("DCF") issued a finding that did not substantiate the allegation which resulted in DCF closing "the case." Verf. Comp. at ¶76.[1]

For purposes of the Massachusetts Civil Rights Act, a "threat" is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass 467, 474, cert. denied, 513 U.S. 868 (1994). "Intimidation" involves putting one "in fear for the purpose of compelling or deterring conduct." Id. "Coercion" is the application to another of force "to constrain him to do against his will something he would not otherwise have done." Id., quoting Deas v. Dempsey, 403 Mass. 468, 471 (1988). Both threats and intimidation often rely on an element of actual or threatened physical force, Ayasli v. Armstrong, 56 Mass. App. Ct. at 752, an element that is missing in this case. However, we have held that coercion is a

---

[1] In the context of what occurred here, the Defendants are not immune for reporting under G.L. c. 119 §51A when the complaint was made and filed in bad faith. The statute expressly provides for penalties when such reports are made in bad faith, as here.

broader category that may rely on physical, moral, or economic coercion. See Kennie v. Natural Res. Dep't, 451 Mass. 754, 763 (2008).

In addition to the foregoing, since the Plaintiffs complaint about the unlawful and discriminatory treatment of Child 1, they have been the target of other forms of threats, intimidation, and coercion. For example, on September 15, 2025, John Mandracchia sent the following email to the Plaintiffs:

> The football equipment remains league property. If they are not returned by this Friday, 9/19/26, the league will pursue further steps including replacement cost recovery and, if necessary, a report with local authorities for lost/stolen property or a civil claim to recover costs.

See Verified Complaint at ¶75.

This is an overt threat, plain and simple. What Mandracchia fails to grasp is that the Plaintiffs only desire is for their two ten year olds and six year old to resume playing football without delay and in order to do that they will need equipment. To say or assert the Plaintiffs were attempting to steal property is not only absurd, it is actionable.

At repeated times and intervals, the Plaintiffs requested information, details, reports, and specifics regarding the allegations against Child 1 that resulted in his exclusion from football activities. See Verf. Comp. at ¶58. The Defendant refused to produce and of this information and at all times relevant, had the power to do so. In contrast, the power differential between the Plaintiffs and the Defendants is apparent. The Defendant alleges that it has all the information and that it will be provided (Verf. Comp. at ¶¶ 51 and Ex. 5D) and yet failed time after time to produce anything. In one exchange, Mandracchia stated that if a "punishment" was imposed, they could appeal the decision—a hollow remedy given the unilateral control WYFC retained. Most telling was Mandracchia's statement, "I would like to remind you that this is a private club. The board has the right to

remove children and parents if we feel it is in the best interest of the organization," underscoring his retaliatory posture and the board's disregard for equal access. Verf. Comp. at ¶ 52. This statement is, by definition, threats, intimidation and coercion and an unveiled attempt by the Defendant to have the Plaintiffs give up and leave the program.

In another exchange, Mandracchia admitted in writing that the exclusion of the family was in retaliation against Ms. Gauvin and Mr. Berkowitz, thereby confirming the discriminatory motives underlying WYFC's actions. Verf. Comp. at ¶ 68 and Ex. 7C.

Threats, intimidation, and coercion is further reflected in WYFC's "Official Statement," authored by Mandracchia, which expressly states that the Plaintiffs violated the Defendant's Code of Conduct. See Verf. Comp. ¶77 and Ex.9. This is pretext for the Defendants actions. This is pretext for the Defendants actions. Moreover, this language demonstrates the league's intent to deflect blame while disparaging the Plaintiffs in yet another display of threats, intimidation, and coercion.

Finally, in an email exchange regarding scheduling, Mandracchia refused to accommodate Ms. Gauvin (or Mr. Lovejoy's) ability to attend a meeting scheduled with less than one-days' notice, insisting that the meeting would go forward regardless. See Verf. Comp. ¶67 and Ex. 6E -6F; 6I-6L. This inflexible stance confirmed that the board had already made up its mind, and that it had no genuine interest in considering Ms. Gauvin and Mr. Berkowitz's perspective. Id.

**B.** **The Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief**

The Plaintiffs and their children face actual and imminent irreparable harm that cannot be redressed by a final judgment after a full trial. Courts have recognized that "an

irreparable injury is any harm that cannot be vindicated by litigation on the merits" and occurs when "there is no adequate remedy at final judgment." Waltham Centerpoint I Inv. Grp., LLC v. Generation Bio Co., No. 2284CV01860-BLS1, 2025 Mass. Super. LEXIS 3, at *7 (Mass. Super. Ct. Jan. 21, 2025).

Here, the exclusion of Child 1 and his siblings from the Wachusett Youth Football and Cheer ("WYFC") program constitutes a loss of rights that cannot be restored retroactively. Football is a seasonal, age-specific activity. Once the 2025 season passes, these children will never again be ten years old or able to reclaim the unique developmental and social benefits of playing football with their peers. No monetary award can restore those lost experiences or undo the stigma of exclusion based on disability.

The harm to Plaintiffs is neither speculative nor remote, but actual and imminent. See Am. Fed'n of State, Cnty. & Mun. Emps. v. Rouse, No. 02-2276, 2002 Mass. Super. LEXIS 233, at *7 (Mass. Super. Ct. June 12, 2002) citing Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass. 1991)). On Sept. 3, 2025, WYFC President John Mandracchia informed the Plaintiffs that Child 1 could not attend practice due to vague "complaints," later escalating his explanation to an allegation that Child 1 threatened to "gouge out eyeballs" (Verf. Complaint at ¶¶ 21–22). Shortly thereafter, WYFC officials excluded not only Child 1, but also his siblings, despite the absence of any evidence of misconduct or violation of league policy (Verf. Complaint at ¶¶ 38, 47). Compounding this exclusion, Mandracchia issued coercive emails demanding the return of football equipment, threatening that if it were not returned by a date certain, WYFC would report the equipment as "stolen" to police and pursue civil action (Verf. Complaint at ¶ 46). These threats created

a climate of intimidation that continues to chill Plaintiffs' ability to advocate for their children's rights and underscores the immediacy of the injury.

This Court has also recognized that harms "whose value cannot readily be quantified" are classic examples of irreparable injury. Medmarc Cas. Ins. Co. v. Harvard Bioscience, Inc., No. 2184CV01338-BLS2, 2022 Mass. Super. LEXIS 10, at *9 (Mass. Super. Ct. Jan. 31, 2022). The exclusion of Child 1, a child with Autism, strips him of access to the structure, teamwork, and sense of belonging that football uniquely provides —benefits that are central to his social and emotional development. Similarly, the retaliatory exclusion of his siblings deprives them of the right to participate equally in a community program, inflicting reputational stigma and emotional harm that cannot be measured in dollars and cents. Unless this Court intervenes, the Plaintiffs and their children will continue to suffer irreparable injury with each passing week of the season, making emergency injunctive relief not only appropriate but necessary.

**C.  The Public Interest Strongly Supports the Issuance of an Injunction**

The issuance of an injunction is paramount to the public interest because it ensures that Massachusetts' anti-discrimination laws are enforced with the urgency and seriousness they demand. In addition to its federal law counterparts, the Massachusetts Legislature enacted G.L. c. 151B and G.L. c. 272, §§ 92A, 98, and 98A to eliminate discrimination in places of public accommodation and to guarantee all persons equal access to community programs. The Supreme Judicial Court has made clear that "the public interest in enforcing anti-discrimination statutes supports injunctive relief." See Currier v. Nat'l Bd. of Med. Exam'rs, 462 Mass. 1, 12 (2012). Where the Legislature has expressed a strong policy in

17

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

favor of eradicating discrimination, the courts have recognized that the public interest weighs heavily in favor of swift judicial intervention.

That principle is directly implicated here. WYFC is a community-based youth football program, operating on municipal grounds, and holding itself out to the public as an organization dedicated to children and families. Its exclusion of Child 1 because of his Autism, coupled with retaliatory exclusion of his siblings and coercive threats directed at their parents, strikes at the core of equal access to community life. The public interest is disserved when youth sports organizations—especially those operating on public land— are permitted to exclude children with disabilities based on stereotypes, unfounded complaints, or retaliation. Unless this Court acts, the message conveyed is that discriminatory exclusion of children with disabilities will be tolerated, undermining both the letter and spirit of the Commonwealth's anti-discrimination framework.

Beyond this case, the broader public interest lies in sending a clear and unequivocal message that retaliation and intimidation against families who assert their rights will not be condoned. Mandracchia's threats to report Plaintiffs to the police for "stolen" equipment unless they capitulated, and his exclusion of multiple children after their parents sought municipal intervention, exemplify precisely the type of coercive conduct that the law seeks to deter (Verf. Complaint at ¶ 46). Failure to enjoin such conduct not only harms these children but also chills other families from stepping forward to enforce their rights. The Commonwealth's public policy of inclusivity in public accommodations and youth programs demands that courts act swiftly and decisively to prevent the continuation of discriminatory and retaliatory practices. By issuing an injunction, the Court will advance

the Legislature's intent, protect vulnerable children, and ensure that community programs remain truly open to all.

## V. CONCLUSION

For all of the reasons set forth above, the Plaintiffs have more than demonstrated a strong likelihood of success on the merits, the existence of actual and imminent irreparable harm, and that both the balance of harms and the public interest weigh decisively in their favor. The Defendant's discriminatory and retaliatory actions have deprived these children of their right to participate in youth football, inflicted stigma and exclusion that cannot be undone, and sent an unlawful and harmful message that children with disabilities may be denied access to community programs. Unless the Court intervenes immediately, the 2025 season will be permanently lost, and with it, the unique developmental and social opportunities football provides at this stage of the children's lives.

The law is clear: discrimination and retaliation in any form are intolerable under both federal and state law, and swift judicial action is necessary to ensure that families are not left without recourse when excluded from public accommodations. The Defendant's conduct—ranging from exclusion based on disability, to retaliatory bans of siblings, to threats of police reports and civil suits—underscores the urgency of this Court's intervention. Equity and justice demand that these children be restored to the field without delay, and that the Defendant be enjoined from continuing its unlawful conduct.

Accordingly, Plaintiffs respectfully request that this Court:

1. Order the immediate reinstatement of Plaintiffs' children to full and equal participation in the WYFC football program;

2. Enjoin WYFC, its officers, directors, agents, and affiliates from engaging in any further acts of discrimination, retaliation, intimidation, or coercion against Plaintiffs and their children;

3. Mandate reasonable accommodations and modifications to WYFC's policies, practices, and procedures to ensure equal access for children with disabilities consistent with federal and state law;

4. Prohibit the Defendant from disseminating false, disparaging, or retaliatory statements against the Plaintiffs and their family;

5. Award Plaintiffs their costs and attorneys' fees as permitted under G.L. c. 151B, G.L. c. 272, and federal law; and

6. Grant such other and further relief as this Court deems just and proper to fully vindicate the Plaintiffs' rights and prevent the continuation of unlawful practices.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

Respectfully submitted,

MICHELLE GAUVIN and JEFFREY
BERKOWITZ, Individually and as Parents and
Next Friends of Their Minor Children

By their attorney,

*Peter S. Farrell*
Peter S. Farrell (BBO #656512)
Farrell Law Group PLLC
46 Railroad Avenue, Suite 204
Duxbury, MA 02332
Tel: (781) 236-3620
pfarrell@farrelllavin.com

Dated: October 2, 2025

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

# E-FILED

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiffs,*

    v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants.*

---

C.A. No.: 2585CV1329B

(3)

## PLAINTIFF'S MOTION FOR SPECIAL PROCESS SERVER

In accordance with the provisions of Rule 4C of the Mass. R. Civ. P., the undersigned hereby moves this Honorable Court to issue an order appointing **David Ayles** and **QuickServ/Allstate** as process server in the above-entitled action.

The undersigned swears to the best of his knowledge and belief that the person to be appointed process server is a Constable and a qualified and knowledgeable person in the service of court process, is 18 years of age or over, and is not a party to this action.

10/3/25.  Allowed.  Townsend J.
Attest: E. Tate   A.C.M.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

**E-FILED**

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                   SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY
BERKOWITZ, individually and as
parents and next friends of their minor
children,**
    *Plaintiffs,*

    v.

**WACHUSETT YOUTH FOOTBALL
AND CHEER, INC.,**
    *Defendants.*

C.A. No.: 2585CV1329B

**(4)**

---

### PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR SHORT ORDER OF

### NOTICE

Plaintiff moves this Court pursuant to Mass. R. Civ. P. 65(b) and Superior Court

Rule 9A(d) for entry of a Short Order of Notice to ensure that Plaintiff's Motion for

Preliminary Injunction is heard on an expedited basis.   The substantive motion, as is set

forth in the Verified Complaint is predicated upon the exclusion of three minor children,

one of whom is disabled, from playing youth football.   The football season is well

underway and it is critical that the preliminary injunction be heard and decided forthwith.

WHEREFORE, Plaintiff requests that the Court issue an Order directing

Defendants to appear and show cause on an expedited basis why the relief sought should

not be granted.

10/3/25.   Allowed.   See P. #5.   Townsend. J.
              Attest: S. TLHe   A.C.M.

Date Filed 10/3/2025 11:00 AM
Superior Court - Worcester
Docket Number

**E-FILED**

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPT.

---

**MICHELLE GAUVIN and JEFFREY BERKOWITZ, individually and as parents and next friends of their minor children,**
*Plaintiffs,*

v.

**WACHUSETT YOUTH FOOTBALL AND CHEER, INC.,**
*Defendants.*

C.A. No.: 2585CV1329B

(5)

---

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

NOW COME the Plaintiffs Michelle Gauvin and Jeffrey Berkowitz, individually and as parents and next friends of their minor children, who respectfully move this Court, pursuant to Mass. R. Civ. P. 65, for the entry of a Preliminary Injunction against Defendant Wachusett Youth Football and Cheer, Inc. ("WYFC").

As set forth in the Verified Complaint, the exhibits thereto, and the accompanying Memorandum of Law, WYFC has engaged in unlawful discrimination, retaliation, intimidation, and coercion by excluding Plaintiffs' children from participation in youth football and by issuing coercive threats against their parents. Plaintiffs have demonstrated a strong likelihood of success on the merits of their claims, actual and imminent irreparable harm absent immediate judicial intervention, and that both the balance of harms and the public interest weigh decisively in their favor.

10/3/25    CLERK TO ISSUE SHORT ORDER NOTICE.

*Gownard, J.*

10/3/25. S.O.N to issue,
returnable on 10/14/25 @ 2:00pm
in Courtroom 19. ∫. T[?]te A.C.M.